George Hanson, Jr., as Administrator of the Estate of Mabel Laura Hanson, Deceased, Appellant, v. P. A. Peterson Home Association, a Corporation, Appellee.

Gen. No. 11,593.

Second District, First Division.

May 4, 1962.

Reno, Zahm, Folgate & Skolrood, of Rockford, for appellant.

Williams, McCarthy & Kinley, for appellee.

McNEAL, J.

George Hanson, Jr., Administrator of the Estate of Mabel Laura Hanson, deceased, brought this action against the P. A. Peterson Home Association of Rockford on its contract to furnish care and maintenance for deceased during her lifetime. Plaintiff sought to recover hospital and medical expenses incurred by Mrs. Hanson while in California. The cause was tried by the Circuit Court of Winnebago County without a jury. Recovery was denied and plaintiff appealed.

In 1944 the P. A. Peterson Home Association was an Illinois, not for profit, corporation which provided a home in Rockford for elderly persons of Swedish nationality or descent. In her application for admission to the Home dated March 6, 1944, Mabel Laura Hanson stated that she was a widow, of American-Swedish descent and of the age of 62 years, and that she had read, knew and agreed to be governed by the rules and regulations of the home. Her application was

accepted. The contract recites that in consideration of $5000 the Association "agrees to furnish care and maintenance for the applicant for and during the term of applicant's natural life." The rules and regulations of the home provided, in part, that care and support for residents shall include room, board, laundry, medical care and nursing when sick, that no resident may charge any merchandise to the home without the consent of the matron, and that residents will refrain from seeking attention from physician without the consent of the matron, excepting where such expense incurred is paid for by the resident.

Residents were free to leave and return to the home at any time. Between 1944 and her death in 1960, Mrs. Hanson left the home on at least five occasions, and her absence each time exceeded four months. She visited her daughter, Helen MacLellan in 1949, 1952 and 1954 at Salt Lake City, and from October 1956 until in May 1957 at Los Gatos, California.

In 1950 while visiting at the home of her nephew, George Hanson, Jr., in Rockford, Mrs. Hanson suffered a heart attack and was hospitalized at the Swedish-American Hospital, Rockford. On this occasion she was treated by Dr. Perry Anderson, who was then serving without compensation as the usual and customary physician for residents of the home. The expenses at the Swedish-American Hospital were paid by the Home Association.

In September, 1959, Mrs. Hanson left the home and at Mrs. MacLellan's expense traveled to Los Gatos, California, to visit in her daughter's home. Sometime after Christmas another heart attack occurred and Mrs. Hanson was taken to the Spotswood Memorial Hospital. After she had been in the hospital about three weeks, she wrote Dr. Anderson on February 2, 1960, in part, as follows: "Now as you know what a terrible expense this is inflicting on my daughter, I was wondering if the Home would pay the hospital

136

bill . . . as long as it is my heart trouble that has kept me here, felt the Home would take care of me here as well as if I were home." In reply the President of the Home Association wrote Mrs. Hanson that the Home was not responsible for any expenses incurred by her while absent from the Home.

The hospital and medical charges for Mrs. Hanson's last illness amounted to $1540.67. The Home Association refused to pay the expenses incurred by deceased and the Administrator of her estate filed this action. No questions arose on the pleadings. The cause was tried on stipulated facts as above set forth. Without any admission as to liability, counsel for the Association agreed that the amount of the charges was reasonable and customary for the services rendered. The trial court entered final judgment for the Home Association, and the Administrator appealed.

The question in this case is whether or not the Home Association is liable under the contract for the hospital and medical expenses incurred by Mrs. Hanson while on an extended visit with her daughter in California. By accepting Mrs. Hanson's application and payment of $5000, the Association agreed "to furnish care and maintenance for the applicant for and during the term of the applicant's natural life," and Mrs. Hanson agreed that her application, if accepted, became a part of the contract between her and the Association. In her application she stated that she fully and without reservation accepted and agreed to be governed by the Rules and Regulations of the Peterson Home.

The "Rules and Regulations Governing the Admission of Residents to the P. A. Peterson Home" uniformly refer to an accepted applicant and to persons admitted to the home as "a resident" or "residents." The word "resident" when used as a noun, is defined to mean a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration. It signifies one having a residence, or

one who resides or abides. "Reside" is a synonym of live, dwell, abide, sojourn, stay or lodge. The People v. Carman, 385 Ill 23, 27, 52 NE2d 197.

As used in the rules and regulations the words "resident" and "residents" connote and refer to persons living in or occupants of the home. According to the rules, persons suffering from contagious diseases were not admissible as residents, a resident who became diseased to such degree that other residents would suffer could be transferred, residents were urged to use the laundry facilities in the basement and not the basins in their rooms, and the Association could cancel and terminate the contract of a resident who wilfully defaced or damaged the home or its contents, or who persisted in a course of conduct which interfered with the occupancy of the home by other residents. These provisions of the rules can pertain only to persons living in or actually occupying the home.

■ One of the rules relied upon by plaintiff-administrator reads: "Care and support for residents shall include room, board, laundry, medical care and nursing when sick . . . ." Since this is one of the rules governing the admission of residents *to* the home, it follows that the benefits contemplated by the rule were to be furnished such residents only *at* the home. The clear import of the language of this rule is that the room, board, laundry, medical care and nursing contemplated by the contract were to be furnished Mrs. Hanson at the home. But if these provisions were considered ambiguous, the construction which the parties themselves placed upon them will be followed by the courts. Illinois Cent. R. Co. v. Michigan Cent. R. Co., 18 Ill App2d 462, 475, 152 NE2d 627.

The parties themselves interpreted the provisions for room, board and laundry to mean that such benefits were to be furnished at the home. There is no evidence in the record, nor is it suggested that the

Association ever furnished or paid for Mrs. Hanson's room, board or laundry while she was absent from the home visiting her daughter in California or Utah, or at any place other than at the home. There is no more convincing evidence of what the parties intended by their contract than to see what they did in carrying out its provisions. Department of Revenue v. Jennison-Wright Corp., 393 Ill 401, 408, 66 NE2d 395.

Medical care and nursing were included with room, board and laundry in the rule which itemized the care and support provisions of the contract, and the interpretation the parties themselves placed on the room, board and laundry provisions is indicative and persuasive that they intended that medical care and nursing were likewise to be furnished Mrs. Hanson only while she was residing or living at the home. This interpretation of the intention of the parties is not inconsistent with the Association's assumption of the expenses connected with Mrs. Hanson's illness while visiting her nephew in Rockford. There is nothing in the record indicating that she was not then actually residing at the home.

Of the total charges for Mrs. Hanson's last illness, three doctors submitted bills amounting to $425. One rule required residents to refrain from seeking attention from physician without the consent of the matron, excepting where such expense incurred is paid for by such resident. There is no evidence that the matron of the home ever consented to attention or attendance by these doctors upon Mrs. Hanson. Under such circumstances the rule provides that expenses so incurred be paid for by the resident.

The judgment of the Circuit Court of Winnebago County was correct and it is therefore affirmed.

Affirmed.

DOVE, P. J. and SMITH, J., concur.