JOHN COLEY *et al.*, Plaintiffs-Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

Third District No. 3—88—0182

Opinion filed February 9, 1989.

1078

Andrew J. Kleczek, of Kelley & Kleczek, of Joliet, for appellants.

Robert Jackson and John A. Kendrick, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:
This case comes to us on appeal from a declaratory judgment action in the circuit court of Peoria County. The question presented is whether the deceased grandson of John Coley was a relative as that term is defined in an insurance policy. The definition of "relative" in the policy required that decedent "live with" the named insured, here John Coley. The trial court found the grandson did not "live with" his grandfather at the time of his death and was not covered by the underinsured motorist provision of the policy. We agree.

The deceased grandson, Robert Coley, was killed in a traffic accident in St. Clair County, Illinois, on May 3, 1985. Plaintiff John Coley had purchased insurance from the defendant State Farm Mutual Automobile Insurance Company. John Coley's policy contained an underinsured motorist clause under which defendant was liable for bodily injury to John Coley's relatives caused by an underinsured motorist. The driver of the vehicle which struck the decedent was insured, and his insurance carrier paid to the limit of its liability. Defendant was potentially liable for the difference between its liability limit and the damages paid by the other insurance carrier.

The defendant's policy provided coverage for the named insured,

his spouse, and their relatives. The term "relative" was defined as, "[A] person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child at school." After Robert Coley's fatal accident, plaintiffs filed a claim with the defendant. On February 10, 1986, plaintiffs were informed the defendant had denied the claim because the decedent did not conform to the definition of "relative" in the policy. On April 18, 1986, Robert Coley's grandfather, John Coley, and father, Thomas Coley, filed a declaratory judgment action against the defendant.

The evidence adduced at trial showed the decedent had left his father's home and moved in with his grandfather two years prior to graduating from high school. He moved most of his clothing and personal possessions to his grandfather's house and from that time the grandfather provided him with food and clothing as well as a room.

After graduation from high school, the decedent enlisted in the Air Force for a four-year period. He received his basic training in Texas and afterwards was stationed at several locations throughout the United States and overseas. The Air Force furnished living quarters at each base where he was assigned. The decedent was financially self-supporting and was not dependent on his parents or grandparents. He was still serving in the Air Force at the time of his death.

The evidence showed the decedent had kept some of his belongings at his grandfather's house, had continued to use it as his address on official documents and to receive mail there. He returned to his grandfather's home during leaves to visit his family. However, at the time of his enlistment, the plaintiff John Coley altered his insurance policy by removing the decedent as a named insured, and his premiums were reduced as a result. When the decedent purchased a motorcycle he obtained his own insurance, but this had lapsed at the time of his death.

■ Plaintiffs argued defendant has waived its argument on appeal by its admissions that decedent was a relative of the named insured, John Coley. The record shows that in all proceedings in the circuit court defendant carefully distinguished between the word "relative" as it is commonly used and "relative" as that word is defined in the insurance contract. While freely admitting decedent was a "relative," i.e., a blood relation, it consistently denied the decedent was a "relative" as that word is defined in the contract. The plaintiffs' argument is not well-taken and waiver is not an issue here.

■ The single issue presented here is the meaning of the term

"live with" in the policy. In applying the rules of interpretation to an insurance contract, the words of the policy should be given their plain and ordinary meaning and the court should not search for ambiguity where there is none. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203.) Here, the contract defines a relative as one that "lives with" the named insured. To be covered by the policy, the decedent would have to be living with his grandfather at the time of his death. Questions of applicable coverage can be determined only as of the time of the accident creating potential liability. (*Hawkeye Security Insurance Co. v. Sanchez* (1984), 122 Ill. App. 3d 183, 460 N.E.2d 873.) At the time of his accident, the decedent was an airman in the Air Force stationed in southern Illinois. He lived on the air base. Plaintiffs have repeatedly stressed the deep emotional ties between the decedent and his grandparents, a room was kept for his use in his grandparents' home, he kept some of his personal possessions there, his frequent visits to the home, and his receipt of mail at his grandparents' address. All of this, however, begs the issue of what the term "lives with" means. The dictionary supplies two definitions of "live" which relate to this inquiry. The first is "to dwell, *i.e.*, to remain for a time, to live as a resident" and second, to "cohabit, *i.e.*, to live together." (Webster's Ninth New Collegiate Dictionary 699 (1986).) Under either of these definitions, the decedent did not live with his grandfather. He was not visiting, going to, or coming from his grandfather's house at the time of the accident.

"The construction to be given to insurance contracts, like other contracts, should be a natural and reasonable one. [Citation.] In order not to lead to unreasonable results, or to defeat the intention of the parties to a contract of insurance, the construction thereof must not be strained, arbitrary, irrational, unnatural, or forced, or strictly technical; rather, it must be fair, natural, reasonable, logical, and practical, having reference to the risk and the subject matter and the purposes of the entire contract." (*Yarbert v. Industrial Fire & Casualty Insurance Co.* (1978), 56 Ill. App. 3d 1034, 1036, 372 N.E.2d 886, 887.)

In *Yarbert*, the court was faced with much the same question presented here, but the contract language was "a resident of the same household." There, the court held that since the two parties involved, a mother and son, lived at separate addresses there was no coverage. Unless it is obvious that the language in a policy is used in a technical connotation, the language is accorded the meaning which common experience imparts. (*Robinson v. Hertz Corp.* (1986), 140 Ill. App. 3d 687, 489 N.E.2d 332.) In this case, the decedent lived on the Air

Force base where he was assigned for duty. Under the common understanding of the expression "live with," he did not live with his grandfather at the time of his death.

 █ Plaintiffs have argued Illinois law requires an insurance policy be construed against the insurer and cites *Hawkeye*. In that case, the court found the phrase "resident of the named insureds' household" had no fixed meaning and should be construed against the insurer. *Hawkeye* correctly stands for the proposition that an ambiguous insurance contract should be construed against the insurer. The court in *Hawkeye* nevertheless found plaintiffs were not entitled to an automatic finding in their favor and found for the defendant on the facts. The definition of a "relative" contained in this policy has been considered before by Illinois courts. Though not interpreted, the definition has been held to be unambiguous for the purpose of construing an insurance contract. (See *State Farm Mutual Automobile Insurance Co. v. Byrne* (1987), 156 Ill. App. 3d 1098, 510 N.E.2d 131.) When the parties' insurance agreement is clear and unambiguous, it is to be enforced as written, without going behind the language to speculate on the purposes underlying the provision. (*Van Vleck v. Barbee* (1983), 115 Ill. App. 3d 936, 451 N.E.2d 25.) Here we find no ambiguity which would require us to construe the contract against defendant or go behind the contract to consider its underlying purpose.

Plaintiffs go on to argue that Illinois courts have expressly held that "live" and "reside" are synonymous. They cite *Hanson v. P.A. Peterson Home Association* (1962), 35 Ill. App. 2d 134, 182 N.E.2d 237, which contains language to this effect. There, the court interpreted contract language based on the contract taken as whole and the past conduct of the parties. It was not called upon to render a precise interpretation of the word "live" nor did its decision rely on the interpretation of this word. In *People v. Carman* (1943), 385 Ill. 23, 52 N.E.2d 197, also cited by plaintiffs, the Illinois Supreme Court was called upon to decide whether a convict imprisoned in Missouri could have been a resident at his Chicago address for purposes of the statute of limitations. The court distinguished between a technical legal residence and the common understanding of the word "reside" to be employed in statutory construction. It wrote:

> "Plaintiff in error was not a resident of the address he claimed as his legal residence, in the sense that he occupied it in the manner in common use, nor in the ordinary conception of the use of a residence, according to common practice, or in the ordinary course of events. He did not make the ordinary use of such residence or occupy it according to common prac-

tice. *** On the contrary, his relation, if any, to the place which he claims was his legal residence, was purely technical. It was uncommon, extraordinary and abnormal. If we assume that some address in Chicago constituted his technical legal residence, to which he intended to return after his release, by no stretch of imagination can it be said that he was usually resident at that address during the time here involved." *Carman,* 385 Ill. at 28, 52 N.E.2d at 199.

Although this case does not involve statutory construction, we, like the court in *Carman,* must employ the common understanding of the words in question, not a technical, legal one.

■■ The plaintiffs have cited *Cincinnati Insurance Co. v. Argubright* (1986), 151 Ill. App. 3d 324, 502 N.E.2d 868, and argued the deceased was unemancipated and intended to return to his grandparents' house when discharged from the Air Force. They have failed to show how the decedent here could have been unemancipated from his grandfather where there had been no severance of ties with his natural father. In addition, there exists in Illinois law a long-standing rule that a child in the military service is emancipated for the term thereof. (*Iroquois Iron Co. v. Industrial Comm'n* (1920), 294 Ill. 106, 128 N.E. 289.) Students and unemancipated persons in military service are considered to be relatives even though they may not actually reside in the household, but emancipated children are not covered. 12A G. Couch, Insurance §45:637, at 140-41 (rev. 2d ed. 1981).

The court in *Argubright* also considered where the defendant's unemancipated son had spent the majority of his time. In that case, the court determined that the family maintained two residences and the son had spent all of his time in one or the other of the family residences. The fact that the son did not live exclusively at the insured residence did not allow the insurer to avoid liability. In this case, the decedent was emancipated and did not spend a substantial portion of his time living in his grandfather's house. It is necessary, of course, that the various persons actually reside in the same household, and this test ordinarily is not met by a son who is independent of the household even though he still receives some financial assistance. 8C J. Appleman & J. Appleman, Insurance Law & Practice §5080.35, at 249-50 (1981).

■ Plaintiffs have repeatedly mentioned the decedent's intention to return to his grandfather's house after his discharge, that he used his grandfather's address to receive mail, and listed his grandfather's address as his legal residence on official documents, *et cetera.* These arguments go to the issue of intent related to the deceased's legal

residence or domicile. The question here is not one of legal residence or domicile but rather one of contract construction, and this court will interpret the contract's language in its ordinary plain meaning, not in a technical legal sense. Considering the decedent was a young, emancipated man serving in the armed forces, where he could have only an occasional, transitory presence in his grandfather's home, he did not "live with" his grandfather for the purposes of this insurance policy. For this reason the finding of the circuit court was not against the manifest weight of the evidence and is affirmed.

Affirmed.

LUND and KNECHT, JJ., concur.