T.H.E. INSURANCE COMPANY, Plaintiff-Appellee, v. CHICAGO FIRE-
WORKS MANUFACTURING COMPANY *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—97—3096, 1—97—3245,
1—97—3280 cons.

Opinion filed December 30, 1999.—Rehearing denied February 3, 2000.

Clifford Law Offices, of Chicago, for appellants Manuel Anthony Cadena, Larisa Cadena, Andres Cadena, and Marcella Garcia.

Kralovec & Marquard, Chartered, of Chicago, for appellant City of Chicago Heights.

Karlin & Fleisher, of Chicago, for appellant Dale Baikauskas.

Lucid Legal Techniques, of Chicago, for appellant Toni McLellan.

Schuyler, Roche & Zwirner, P.C., of Chicago (Charles H. Cole and Dolores Ayala, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

This consolidated appeal involves a dispute regarding coverage under a certificate of insurance and an insurance policy issued by T.H.E. Insurance Company (T.H.E.) to Chicago Fireworks Manufacturing Co. (Fireworks), the insured, and the City of Chicago Heights (City), an additional insured. The trial court entered declaratory judgement in favor of T.H.E., finding that Fireworks and City failed to comply with a condition precedent to coverage and therefore the policy provided no coverage for claims against City and Fireworks. We reverse.

On July 3, 1991, Fireworks conducted a fireworks display at Bloom Township High School in Chicago Heights. City sponsored the fireworks display and provided security and fire personnel for the display. A 12-inch aerial shell exploded in the crowd of spectators, injuring Manuel Anthony Cadena, Larisa Cadena, Andres Cadena, Marcella Garcia, Dale Baikauskas, Christopher Baikauskas, Toni McLellan, Michael McLellan, Jerrica McLellan, Sally Hernandez and Kelley Hernandez. These 11 injured persons filed tort actions, some in state court and some in federal court, against Fireworks and City. We will refer to the 11 injured persons as the Tort Plaintiffs.

T.H.E. undertook defense of Fireworks and City in the tort actions under a reservation of rights letter. In the letter, T.H.E. maintained that Fireworks and City had failed to comply with an endorsement to the insurance policy. T.H.E. reserved the right to deny coverage or liability under the policy.

On January 22, 1992, T.H.E. filed this action for declaratory judgment. T.H.E. sought a declaration that it had no duty to defend Fireworks and City and that the policy covered none of the Tort Plaintiffs' claims. T.H.E. maintained that the endorsement required compliance with the National Fire Protection Association's NFPA 1123 Code for the Outdoor Display of Fireworks (1990 ed.) (NFPA 1123), and that the failure of Fireworks and City to comply with NFPA 1123 constituted a breach of a condition precedent to coverage. T.H.E. named Fireworks, City and the Tort Plaintiffs as defendants to the declaratory judgment action.

In the Tort Plaintiffs' actions, the state court granted summary judgment in favor of City. We affirmed that decision. See *Cadena v. Chicago Fireworks Manufacturing Co.*, 297 Ill. App. 3d 945, 697 N.E.2d 802 (1998). The Court of Appeals for the Seventh Circuit reached a similar decision in *McLellan v. City of Chicago Heights*, 61 F.3d 577 (7th Cir. 1995). Thus, City is no longer a defendant in the underlying tort actions and does not have an interest in this appeal.

The insurance policy in question is a commercial general liability

policy of insurance which afforded coverage to Fireworks for firework displays staged between May 1, 1991, and May 1, 1992. T.H.E. issued a certificate of insurance to City, naming City as an additional insured under the policy and providing coverage to City for the fireworks display staged on July 3, 1991.

The policy contained an endorsement which provides in part:

"For and in consideration of the premium charged, it is hereby understood and agreed that coverage provided by this policy is void if the Named Insured and all Additional Insureds fail to strictly comply with all applicable provisions of the Firework Codes and Standards as published by the National Fire Protection Association (NFPA). ***

Coverage under this policy is conditioned on compliance with this endorsement."

The 1990 edition of NFPA 1123 contains guidelines for the separation of spectators from the firework displays. The following provisions of NFPA 1123 are relevant:

"1—4 **Definitions.** For the purpose of this code, the following terms shall have the meanings shown below:

**Approved.** Acceptable to the 'authority having jurisdiction.'

NOTE: *** In determining the acceptability of installations or procedures, equipment or materials, the authority having jurisdiction may base acceptance on compliance with NFPA or other appropriate standards. In the absence of such standards, said authority may require evidence of proper installation, procedure or use. ***

***

**Authority Having Jurisdiction.** The 'authority having jurisdiction' is the organization, office or individual responsible for 'approving' equipment, an installation or a procedure.

NOTE: *** Where public safety is primary, the 'authority having jurisdiction' may be a *** local or other regional department ***. For insurance purposes, an insurance inspection department, rating bureau, or other insurance company representative may be the 'authority having jurisdiction.' ***

* * *

3—1.1 The intent of this chapter is to provide guidance for clearances upon which the authority having jurisdiction shall base its approval of the outdoor fireworks display site. Where added safety precautions have been taken, or particularly favorable conditions exist, the authority having jurisdiction shall decrease the recommended separation distances as it deems appropriate. When unusual or safety threatening conditions exist, the authority having jurisdiction shall increase the recommended separation distances as it deems necessary.

**3—1.2** The areas selected for the discharge site, spectator viewing area, parking areas, and the fallout area shall be inspected and approved by the authority having jurisdiction.

**3—1.3** The site for the outdoor display shall have at least a 70 ft (22m) radius per inch of internal mortar diameter of the largest aerial shell to be fired ***. No spectators, dwellings, or spectator parking areas shall be located within the display site."

Because the insurance company sent no representative to determine whether Fireworks used appropriate safety procedures, City was the authority having jurisdiction. The parties stipulated that City permitted the Tort Plaintiffs to view the fireworks display at a distance of 142 feet from the 12-inch mortar that discharged the aerial shell, although the guidelines suggested a distance of 840 feet from the mortar to the nearest spectators. Recognizing, however, that NFPA 1123 gives City discretion to increase or decrease the separation distances, the trial court held a trial to determine whether City had exercised its discretion properly.

City's administrator testified that he coordinated City's fireworks presentations from 1975 through 1992. City kept the same perimeters for the crowd in 1991 as it had used in prior years. An expert testified that, according to a set of standards published in 1982, a separation distance of "150 feet was appropriate for large caliber shells," including 12-inch shells.

Fireworks, City, and the Tort Plaintiffs filed many motions urging the trial court to construe the insurance policy in their favor because of ambiguities in the policy. In each instance, the trial court found the insurance policy unambiguous. The trial court said:

"[T]he existence of such discretion within this provision of the NFPA Code, which is incorporated by reference into the insurance policy itself, does not render the policy ambiguous; nor is there any ambiguity created by the failure to define the terms quote, 'inspect[ed]', close quote and quote 'approv[ed]', close quote which appear in Section 3—1.2 of the Code.

Where the words in the policy are unambiguous, as I believe they are here, they are to be given their plain, ordinary and popular meaning."

Although the judge found no ambiguity in the insurance contract, she allowed Charles Weeth to testify, as an expert, about the meaning of the term "added safety precautions" contained in section 3—1.1. Weeth said:

"In setting up a display, one can add additional safety precautions as to what is required in the code. And then some of those would be if you have mortars placed on the ground, adding sand bags around them, racks. The racks they won't tip over and shoot into the audience.

Taking into account unusual sites such as shooting from or near a building from a barge, taking into account favorable wind conditions. Anything that one can modify or by moving things or adding things that would add additional safety for the spectators."

He also explained that the term "particularly favorable conditions," included in section 3—1.1, has "something to do with *** particular variables at that site or that display. Natural barricades, trees, favorable wind, angling of mortars, anything that can be modified or that exists that the operator can take into account that would provide for additional safety for the public."

On cross-examination, Weeth admitted that he neither visited nor examined photographs of the scene of the fireworks display. He was not aware of the fireworks displays held at that same location between 1976 and 1991. He did not know that City personnel moved the barricades prior to the fireworks display at the request of City fire chief. Weeth admitted that the movement of barricades from one location to another could be an exercise of discretion by the City. Furthermore, the presence of fire rescue equipment, fire engines, police and fire department personnel at a fireworks display can be considered added safety precautions.

The trial court then asked Weeth a series of questions:

"THE COURT: *** Do you have an opinion *** as to the kinds of added safety precautions that an operator would take if the operator wanted to reduce the radius field display let's say 600 feet?

\* \* \*

THE WITNESS: Yes, I have an opinion on that.

\* \* \*

THE COURT: Is there a particularly favorable condition that you can think of that would justify the reduction of 600 feet?

THE WITNESS: No.

THE COURT: Is there an added safety precaution that under this code that could be taken that would justify that?

THE WITNESS: No."

On the basis of Weeth's testimony, the trial court entered judgment in favor of T.H.E., finding Fireworks violated the contract when it used the precautions City approved.

■ When an insurance contract is unambiguous, the court must not consider any evidence beyond the four corners of the policy for construing the contract. *Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.*, 240 Ill. App. 3d 598, 603, 608 N.E.2d 155 (1992). If the words in the insurance contract are unambiguous, a court must afford them their plain, ordinary, and popular meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992). The trial court's decision to permit Weeth

to testify about the meaning of several contractual terms is, therefore, inconsistent with that court's holding that the contract was unambiguous. But we find that, regardless of whether the court could properly consider Weeth's testimony, we must construe the contract to provide coverage.

The insurance policy incorporated NFPA 1123 by virtue of the reference in the endorsement. Section 3—1.1 of NFPA 1123 states the intention of the NFPA to "provide *guidance* for clearances upon which the authority having jurisdiction shall base its approval of the outdoor fireworks display site." (Emphasis added.) Section 3—1.3 contains the NFPA recommendations for separation distances, including a recommendation of 840 feet for a 12-inch shell. Section 3—1.1 then provides that where added safety precautions have been taken, or particularly favorable conditions permit, the authority having jurisdiction may decrease the recommended separation distances "as it deems necessary." Most significantly, the NFPA expressly permits the authority having jurisdiction to base acceptance of an installation or procedures on either the NFPA Code or "other appropriate standards." Another appropriate standard published in 1982 permitted the crowd to sit within 150 feet of mortars this size.

Weeth and the trial court focused narrowly on the recommendation in NFPA 1123 of an 840-foot distance between the mortar and the spectators. Even if we considered this recommendation sufficient to create an ambiguity, possibly limiting the kinds of appropriate standards on which City could rely, Illinois law required the court to find the policy covered the incident. "[I]f the words are ambiguous, the policy will be construed in favor of the insured and against the insurer who drafted the policy." *West American Insurance Co. v. Bedwell*, 306 Ill. App. 3d 861, 864, 715 N.E.2d 759 (1999). Moreover, "[a]mbiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured." *Carrao v. Health Care Service Corp.*, 118 Ill. App. 3d 417, 425, 454 N.E.2d 781 (1983). Where the parties present competing reasonable interpretations of the policy, the court must adopt the construction most favorable to the insured. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 141, 708 N.E.2d 1122 (1999). The principles of construction apply to provisions incorporated into the policy by reference. See *Jensen v. USAA Property & Casualty Insurance Co.*, 246 Ill. App. 3d 66, 71-72, 614 N.E.2d 1361 (1993). The construction of an insurance policy is a question of law (*Outboard*, 154 Ill. 2d at 108), which a reviewing court will undertake independently of the trial court's finding. *Mank v. West American Insurance Co.*, 249 Ill. App. 3d 827, 830, 620 N.E.2d 6 (1993).

The insurance policy in *Van Vactor v. Blue Cross Ass'n*, 50 Ill. App. 3d 709, 711, 365 N.E.2d 638 (1977), restricted coverage to "medically necessary" treatment. While one provision appeared to leave to the supervising physician the determination of medical necessity, other provisions appeared to permit the insurer to redetermine medical necessity and deny coverage if it disagreed with the physician. The court found the contract ambiguous and therefore construed the contract to provide coverage for any procedure the supervising physician deemed necessary, at least in the absence of evidence of fraud. *Van Vactor*, 50 Ill. App. 3d at 719-20. Under the insurer's interpretation, it could " 'second-guess' the treating physician's good faith judgment as to the medical necessity of health services rendered and refuse payment, *after* the insured has, in reliance on his doctor's judgment, already received those services." (Emphasis in original.) *Van Vactor*, 50 Ill. App. 3d at 715. The court rejected the interpretation, in part because the insurer provided "no mechanism by which a patient can ascertain in advance whether or not a specific hospitalization or treatment will be considered 'medically necessary.' " *Van Vactor*, 50 Ill. App. 3d at 715.

In this case, unlike *Van Vactor*, the insurer has pointed to no clause in the policy that gave it the right to redetermine the appropriateness of an installation or procedures approved by the authority having jurisdiction. But if the policy had such provisions, the court should not enforce them to defeat coverage. In this case, as in *Van Vactor*, the insurer provided no mechanism by which the insured could determine, before an injury, whether it had coverage. Under NFPA 1123, an insurer can preserve its right to withhold coverage if its representative, as the authority having jurisdiction, properly instructs the insured but the insured refuses to comply with the representative's instructions. T.H.E. sent no representative to inform Fireworks and City in advance as to whether they had any insurance coverage for the display.

If the court adopted T.H.E.'s interpretation of its policy, T.H.E. could contest coverage every time an insured suffered a loss. The policy, as T.H.E. construes it, provides no coverage if Fireworks or any additional insureds failed to comply strictly with NFPA 1123 during the policy period. Even if City had set barriers at a distance of 840 feet, T.H.E. could assert an unusual condition, within the meaning of NFPA 1123 section 3—1.1, required a greater separation distance. If a child crossed the barrier, T.H.E. could claim that the insured violated the provision that no spectators shall be located within the 840-foot radius. The endorsement, as T.H.E. seeks to enforce it, makes no provision restricting the voiding noncompliance to the incident that caused the injury.

We cannot ignore Fireworks' payment of a $17,000 premium for protection from liability. City relied on that protection when it permitted Fireworks to conduct its display.

> "If that protection is not there, the policyholder has been denied substantial economic value in return for the premiums which have been paid. *** After [the] claim was filed, however, [it] was told there was no coverage. In other words, now you have insurance protection; now you don't. While the collection of insurance premiums is an important part of the insurance industry, it is not the only part. Insurers are also expected to honor claims under their policies for which premiums have been paid in good faith." *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 278, 592 N.E.2d 1031 (1992).

■ We hold that the endorsement at issue here requires only that Fireworks obtain the approval of the authority having jurisdiction as a condition for coverage. Fireworks obtained that approval here, and T.H.E. presented no evidence to support a conclusion that City acted fraudulently when it approved the installation or procedures. Accordingly, the judgment declaring that the policy provided no coverage for the claims against Fireworks is reversed.

Reversed.

COUSINS, P.J., and RAKOWSKI, J., concur.