WELLS FARGO NORTHWEST BANK NATIONAL ASSOCIATION, not in its individual capacity, but solely as Owner Trustee for the benefit of BCI 2000–A–B, LLC, BCI 2000–A–C, LLC and BCI Aircraft Leasing, Inc., Plaintiffs–Appellants–Cross–Appellees,

v.

VARIG–S.A. (VIACAO AEREA RIO–GRANDENSE), Defendant–Appellee–Cross–Appellant.

Nos. 03–7765(L), 03–7823(XAP).

United States Court of Appeals, Second Circuit.

Aug. 9, 2004.

Chris Osborne, BCI Aircraft Leasing, Inc. (Deborah J. Denenberg, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, White Plains, NY, on the briefs), for Plaintiffs–Appellants–Cross–Appellees.

Stephen R. Stegich, Condon & Forsyth LLP, New York, NY, for Defendant–Appellee–Cross–Appellant.

Present: CALABRESI, STRAUB, and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.**

Plaintiffs–Appellants–Cross–Appellees Wells Fargo Northwest Bank, BCI Aircraft Leasing, Inc. and related subsidiary companies (collectively, "BCI"), Utah, Illinois and Delaware corporations, brought suit in the Southern District of New York alleging breach of contract by Defendant–Appellee–Cross–Appellant Varig–S.A. (Viacao Aerea Rio–Grandense) ("Varig"), a Brazilian corporation with offices in New York. In September 1996, Varig and BCI entered into a long-term lease agreement ("Lease") for two airplanes. If Varig breached the Lease, a "liquidated damages" provision required Varig to pay BCI, in one lump-sum payment, all past, present, and future rent due under the Lease, and to return immediately the aircraft to BCI. Upon return of the aircraft, BCI was obliged to make a good-faith effort to re-lease the aircraft, and to credit all rents received against Varig's debt.

In October and November 2001, Varig missed two payments, triggering the Lease's liquidated damages provisions. The parties then entered into a letter agreement ("Agreement") under which (1) Varig had to return the aircraft to BCI

immediately and in a slightly improved condition, (2) Varig agreed to deliver to BCI a $2.1 million Note earning 5% interest, (3) BCI was permitted, upon return of the aircraft, to re-lease them and to keep all new rents without crediting those rental payments to Varig's debt either under the Lease or under the Note, and (4) BCI retained the security deposit paid by Varig under the Lease. If Varig missed a single timely payment under the terms of the Agreement, a new "liquidated damages" provision permitted BCI to pursue all its available remedies under the Lease, the Agreement, and the Note. However, the same provision stated that Varig's monetary liabilities would be limited to those it faced under the Lease.

In April and June 2002, Varig missed its payments under the Note and BCI filed the present suit. BCI sought all rents—past, present, and future—as specified by the Lease's liquidated damages provision, and all moneys past due under the Note. Varig responded by arguing (1) that BCI was not the true party in interest to the lawsuit, since it claimed that BCI had previously assigned the Lease and the Agreement to a third party, and (2) that the Agreement's "liquidated damages" provision constituted an unenforceable penalty. The district court (Rakoff, J.) determined that the third party held no more than a security interest in the Agreement, and hence that BCI was the real party in interest. It therefore granted summary judgment to BCI on this defense by Varig. The district court also ruled that, under Illinois law, the Agreement's "liquidated damages" clause was a penalty and could not be enforced. Accordingly, it granted summary judgment to Varig on this issue. Both parties now appeal.

With respect to Varig's argument that BCI is not the "real party in interest" to the Agreement or the Lease under Rule 17

of the Federal Rules of Civil Procedure, we hold that, viewing the facts in the light most favorable to Varig, the district court was correct to grant summary judgment, and we affirm its decision for substantially the reasons it gave.

■ The remaining issues are more difficult. They are principally whether, under Illinois law, the Agreement created a substituted contract between BCI and Varig, or instead could be viewed as an accord dealing with prior debts from the Lease, and, if it was a substituted contract, whether, again under Illinois law, the provision that permitted BCI, in the event of a default, to hold Varig to its obligations either under the Agreement or the Lease, constituted an unenforceable penalty clause.

Were this a case dealing with the law of New York or Connecticut or Vermont, we might well find the questions of state law sufficiently uncertain so that we would certify them to the appropriate highest court of the state. But since Illinois does not accept certification except from the United States Supreme Court and the Seventh Circuit, *see* Ill. Sup.Ct. R. 20, we, like the district court, must do the best we can to determine how Illinois courts would decide a case like this.

We find that, looking at the facts in the light most favorable to BCI, there are substantial ambiguities with respect to Varig's total liability and BCI's reservation of remedies under the Agreement. (These go especially to whether BCI could, under the Agreement, come out substantially ahead of where it was under the Lease, and similarly, whether Varig might end up paying more after breaching the Agreement than it would have after violating the

Lease.) But we also conclude that the parties, in their actions, clearly treated the Agreement as a new contract. This fact is especially significant given Illinois' outlook on interpreting ambiguous contracts in light of the parties' behavior. *See Hanson v. P.A. Peterson Home Ass'n*, 35 Ill.App.2d 134, 182 N.E.2d 237, 239 (1962). Accordingly, we hold that the Agreement should be viewed as a new contract.

■ Viewing the Agreement as a new contract, the "liquidated damages" clause seems, on its face, to be a penalty. The damages provided for do not appear reasonably calculated to compensate for uncertain future losses, but instead look like additional costs intended to secure Varig's performance. *See Raffel v. Medallion Kitchens of Minn., Inc.*, 139 F.3d 1142, 1146 (7th Cir.1998). Moreover, Illinois resolves doubtful cases by classifying liquidated damages provisions as unenforceable penalties. *Id.* We conclude that, on this point, the district court was correct.[1]

We have considered all of Varig's and BCI's other arguments and find them unavailing. The judgment of the district court is therefore AFFIRMED.

---

1. We do not believe that our holding is inconsistent with the Seventh Circuit's decision in *Scavenger Sale Investors, L.P. v. Bryant*, 288 F.3d 309 (7th Cir.2002). For, as we noted earlier, there is a chance that Varig would pay less upon breach of the Lease than under the Agreement's liquidated damages provision.