THIRD DIVISION
March 30, 2007

No. 1-06-0990

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04CH8274 |
| | ) | |
| JON AMATO, | ) | The Honorable |
| | ) | Peter J. Flynn, |
| Defendant-Appellant | ) | Judge Presiding. |
| | ) | |
| (Lea Goldblatt and the Estate of Noel | ) | |
| Goldblatt, | ) | |
| | ) | |
| Defendants). | ) | |

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Allstate Insurance Company (Allstate) filed a complaint seeking declaratory judgment that it did not owe a duty to defend or indemnify its insured, defendant Jon Amato, in a civil lawsuit filed against him by defendants Lea Goldblatt and the estate of Noel Goldblatt. Amato answered the complaint and filed an affirmative defense and several counterclaims. The trial court entered summary judgment orders in Allstate's favor on its complaint and on the affirmative defenses and counterclaims. Amato appeals those orders contending that, under his personal umbrella policy (PUP) with Allstate, he was entitled to defense and indemnification of the underlying suit and that he is entitled to reimbursement for costs and fees he incurred in defending the underlying suit while a determination of coverage was pending. We affirm.

Lea Goldblatt and the estate of Noel Goldblatt filed the underlying suit against Amato and eight other defendants. The lawsuit alleged that various officers, directors, and affiliates of

1-06-0990

Goldblatt's Bargain Stores, Inc. (Goldblatt's), including Amato, induced Lea and Noel Goldblatt to pay $1.2 million in exchange for certain ownership interests in certain organizations controlled by the officers, directors and affiliates. According to the underlying complaint, Lea and Noel Goldblatt never received anything in return for their payments. More specifically, the Goldblatts alleged that Amato fraudulently induced them to invest $375,000 by making intentional false statements and misrepresentations concerning the soundness of the investment; that Amato breached a contract whereby the Goldblatts were to receive a 25% ownership interest in a certain limited liability company (the LLC) in exchange for their $375,000 investment; that Amato breached his fiduciary duty to the Goldblatts when, as a member and manager of the LLC, he failed to deliver the Goldblatts' 25% ownership interest in that organization and refused to provide the Goldblatts with access to that organization's books and records; that Amato violated certain Illinois securities laws in scheming to defraud the Goldblatts, making untrue statements and engaging in practices that deceived the Goldblatts; and that Amato committed common law fraud. The Goldblatts further requested declaratory judgment of their ownership interest in the LLC, the imposition of a constructive trust over all profits arising from Amato's unlawful retention of that interest and an accounting of the LLC's transactions.

At the time that the underlying complaint was filed, Amato was covered by two separate insurance policies issued by Allstate, a condominium owner's policy and the PUP. At issue in this case is the language of the PUP, which provides the following:

> "**Allstate** will pay damages which an **insured person** becomes legally obligated
> to pay because of **bodily injury**, **personal injury** or **property damage**, subject to

2

1-06-0990

the terms, conditions and limits of this policy. **Bodily injury**, **personal injury** and **property damage** must arise from a covered **occurrence**. **We** will not pay any punitive or exemplary damages, fines and penalties." (Emphasis in original.)

The PUP further provides that Allstate "will defend an **insured person** sued as the result of an **occurrence** covered by this policy." (Emphasis in original.) The PUP defines occurrence as:

"an accident during the Policy period, including continuous and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury**, **personal injury**, or **property damage**." (Emphasis in original.)

Whether the occurrence giving rise to the underlying complaint resulted in bodily injury or property damage, as defined by the PUP, was not at issue in the declaratory judgment action in the trial court and is not at issue in this appeal. Whether the occurrence resulted in personal injury, however, is at issue. Personal injury is defined the PUP as follows:

"**Personal injury** means damages resulting from:

(a) false arrest; imprisonment; wrongful detention;

(b) wrongful entry; invasion of rights of occupancy;

(c) libel, slander, humiliation, defamation of character; invasion of rights of privacy." (Emphasis in original.)

The PUP also provides that it does not apply:

"1. To any **occurrence** arising out of any act or failure to act by any person in performing functions of that person's **business**.

3

2. To any **occurrence** arising out of a **business** or **business property**."

(Emphasis in original.)

Amato tendered the underlying complaint to Allstate seeking defense and indemnification under the PUP. In December 2003, Allstate advised Amato that it did not owe any duty to defend or indemnify him under the PUP. Allstate asserted the alleged injuries were not covered because they did not arise from an "occurrence" that resulted in "bodily injury," "property damage," or "personal injury." Moreover, Allstate also raised several exclusions that barred coverage under the PUP, including the exclusion of coverage for liability arising from an insured's business activities.

In March 2005, Allstate filed an amended complaint for declaratory judgment alleging that it had no duty to defend or indemnify Amato for the underlying complaint. Again, Allstate referred to the language of the PUP as justification for its denial of coverage.

Amato answered Allstate's amended complaint, alleging that he was entitled to coverage under the PUP because a "personal injury," specifically "wrongful detention" of the Goldblatts' property, arose from his conduct. In addition, Amato raised an affirmative defense and several counterclaims.

The trial court granted Allstate's motion for summary judgment on its declaratory judgment action on January 11, 2006, after concluding that the allegations in the underlying complaint did not trigger coverage under the PUP. The court stated that it is "quite clear that what the policy was endeavoring to get at is wrongful detention of the person, not wrongful detention of the property." The court reasoned that each of the three categories of damages of

1-06-0990

"personal injury" is centered around a common theme. The trial court concluded that because wrongful detention was included in the same category as false arrest and imprisonment, wrongful detention was intended to cover wrongful detention of a person and not wrongful detention of property.

Allstate's motion for summary judgment regarding Amato's counterclaims was granted on March 8, 2006. Amato appealed.

Appeals from summary judgment orders are reviewed *de novo*. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992). In reviewing summary judgment orders, appellate courts inquire " 'whether the pleadings, together with all other matters of record, pose any genuine issue of material fact.' " Emtech Machining & Grinding, Inc. v. Transcontinental Insurance Co., 296 Ill. App. 3d 626, 628 (1998), quoting Dixon Distributing Co. v. Hanover Insurance Co., 244 Ill. App. 3d 837, 840 (1993). "Summary judgment is appropriate when there is no issue of material fact and the moving party's right to judgment is clear and free from doubt." Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 113 (1995). "[I]f any issue of material fact exists, then the trial court will be deemed to have erred in granting summary judgment." Emtech, 296 Ill. App. 3d at 628. The court must consider the pleadings on file and construe them strictly against the movant and liberally in favor of the nonmoving party. Espinoza, 165 Ill. 2d at 113. "The appellate court may affirm the grant of summary judgment for any reason that appears in the record, regardless of whether that reason is the reason relied upon by the circuit court." Geary v. Telular Corp., 341 Ill. App. 3d 694, 702 (2003).

5

Amato first contends that the court's determination that the language "wrongful detention" in the PUP was not ambiguous and referred only to wrongful detention of a person and not to wrongful detention of property was erroneous. Amato argues that the language is susceptible to two interpretations and should be construed in favor of coverage and that the court improperly based its determination that the language was not ambiguous on the doctrine of *ejusdem generis*.

"A contract is ambiguous when its language is ' "susceptible to more than one meaning [citation] or is obscure in meaning through indefiniteness of expression." ' " Berryman Transfer & Storage Co., Inc. v. New Prime, Inc., 345 Ill. App. 3d 859, 862 (2004), quoting Shields Pork Plus, Inc. v. Swiss Valley Ag Service, 329 Ill. App. 3d 305, 310 (2002), quoting Wald v. Chicago Shippers Ass'n, 175 Ill. App. 3d 607, 617 (1988). " 'Ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured.' " T.H.E. Insurance Co. v. Chicago Fireworks Manufacturing Co., 311 Ill. App. 3d 73, 78 (1999), quoting Carrao v. Health Care Service Corp., 118 Ill. App. 3d 417, 425 (1983). Nonetheless, this principle must yield to rules of reasonable construction. Emtech, 296 Ill. App. 3d at 628. "When an insurance contract is unambiguous, the court must not consider any evidence beyond the four corners of the policy for construing the contract." T.H.E. Insurance Co., 311 Ill. App. 3d at 77. Moreover, when the contract is unambiguous, it should be enforced as written and this court will not speculate on the purposes underlying the provision. Coley v. State Farm Mutual Automobile Insurance Co., 178 Ill. App. 3d 1077, 1082 (1989). In addition, language of an insurance policy "is not considered ambiguous

merely because a term is not defined within the policy or because parties can suggest creative possibilities for the term's meaning." Board of Education of Maine Township High School District No. 207 v. International Insurance Co., 344 Ill. App. 3d 106, 112 (2003).

Again, the PUP provides coverage for "bodily injury," "property damage" and "personal injury." "Personal injury" includes damages resulting from:

"(a) false arrest; imprisonment; wrongful detention;

(b) wrongful entry; invasion of rights of occupancy;

(c) libel, slander, humiliation, defamation of character; invasion of rights

of privacy."

Because the term "wrongful detention" is not defined in the PUP, Amato argues that it is not specifically limited to wrongful detention of a person, and that the trial court improperly adopted the construction most favorable to Allstate when it concluded that the use of "wrongful detention" in the PUP was not intended to mean the wrongful detention of property.

Reviewing the PUP as a whole, we find that the trial court was correct that the term "wrongful detention" unambiguously refers only to wrongful detention of a person, not wrongful detention of property. Each of the three groups of damages under the heading of "personal injury" is centered around a common theme. By placing wrongful detention in the same group as false arrest and imprisonment, two terms which are directly related to the restraint of a person, it is clear that the language was intended to mean the wrongful detention of a person and not to mean wrongful detention of property. Furthermore, "property damage" is specifically covered elsewhere in the PUP. If the PUP were indeed intended to apply to the wrongful detention of

property, it is more logical that wrongful detention of property would be mentioned under the category of "property damage," rather than under the category of "personal injury."

We observe that Amato is correct that the doctrine of *ejusdem generis* did not apply in this case. See City of East St. Louis v. East St. Louis Financial Advisory Authority, 188 Ill. 2d 474, 484 (1999) (the doctrine of *ejusdem generis* applies when a statute lists several classes of persons or things but also specifically provides that the list is not exhaustive). Nonetheless, we find that regardless of the doctrine of *ejusdem generis*, the unambiguous language of the PUP did not apply to Amato's alleged wrongful detention of the Goldblatts' property.

Furthermore, we find that even if the damage incurred in the underlying complaint were covered as a personal injury resulting from Amato's wrongful detention of the Goldblatts' property, both exclusions one and two of the PUP, which exclude coverage for occurrences arising out of business matters, apply to the facts of the underlying complaint. Therefore, Allstate had a duty neither to defend nor indemnify Amato.

In reaching this conclusion, we must first address Amato's contention that the exclusions only excuse Allstate from indemnifying Amato but do not excuse Allstate from defending Amato. This contention requires us to interpret the language of the PUP.

Similarly to other contracts, the construction to be given to insurance contracts should be a natural and reasonable one. Coley v. State Farm Mutual Automobile Insurance Co., 178 Ill. App. 3d 1077, 1081 (1989). "A court should consider the plain meaning of the policy language and should not search for a nonexistent ambiguity." Emtech, 296 Ill. App. 3d at 629. A court must construe an insurance policy as a whole in order to ascertain the meaning of an insurance

8

1-06-0990

policy's words and the intent of the parties. <u>American Alliance Insurance Co. v. 1212 Restaurant Group, L.L.C.</u>, 342 Ill. App. 3d 500, 505 (2003). A court must read the provision in its entire factual context and not in isolation. <u>Glidden v. Farmers Automobile Insurance Ass'n</u>, 57 Ill. 2d 330, 336 (1974).

"An insurer's duty to defend its insured arises from the undertaking to defend as stated in the policy." <u>Zurich Insurance Co. v. Raymark Industries, Inc.</u>, 118 Ill. 2d 23, 55 (1987). "[W]hen considering whether an insurer has a duty to defend, both the underlying complaint's allegations and the relevant policy provisions must be liberally construed in the insured's favor." <u>United Services Automobile Ass'n v. Dare</u>, 357 Ill. App. 3d 955, 965-66 (2005).

In support of his argument, Amato points to the language of three provisions of the PUP. Under the heading of "Insuring Agreement," the PUP provides:

"**Allstate** agrees to provide the coverages indicated on the Policy Declarations."

(Emphasis in original.)

Under the heading of "Defense We Will Provide," the PUP provides:

"**Allstate** will defend an **insured person** sued as a result of an **occurrence**

covered by this policy. " (Emphasis in original.)

Amato contrasts the language of those provisions with the provision that:

"**Allstate** will pay damages which an **insured person** becomes legally obligated

to pay because of **bodily injury**, **personal injury** or **property damage**, subject to

the terms, conditions and limits of this policy.  **Bodily injury**, **personal injury**

and **property damage** must arise from a covered **occurrence**." (Emphasis in

9

original.)

Specifically, Amato notes that the third provision provides that indemnity is subject to the terms, conditions and limits of the policy. He argues that because the first two of the above-quoted provisions do not state that Allstate's duty to defend is subject to the terms, conditions and limits of the policy, the duty to defend is not limited by the exclusions and any "occurrence" must be defended even if Amato will not be indemnified for it.

Viewing the PUP as a whole, we find Amato's reading to be entirely unnatural and unreasonable. Under the exclusions heading the policy, the PUP specifically provides that the policy "will not apply" under certain circumstances, such as when an occurrence arises out of a business matter. Even liberally construing the provisions in Amato's favor, clearly, the parties did not intend for the PUP to require Allstate to defend Amato in cases that fall into one of the excluded categories.

Amato further contends that, even if the exclusions do apply to Allstate's duty to defend Amato, the first and second PUP coverage exclusions do not apply because Amato's "involvement with the Goldblatt's entities arose out of an investment and did not arise out of his occupation, trade or profession."

If an underlying complaint alleges facts which, if true, would exclude coverage, the potentiality of coverage is not present and the insurer does not have a duty to defend. Fragman Construction Co. v. Preston Construction Co., 1 Ill. App. 3d 1002, 1005 (1971). "The insurer bears the burden of establishing that a claim falls within a provision that limits or excludes coverage." Sears Roebuck & Co. v. Acceptance Insurance Co., 342 Ill. App. 3d 167, 172 (2003).

10

In other words, "[i]t is the insurer's burden to affirmatively demonstrate the applicability of an exclusion." Pekin Insurance Company v. Miller, 367 Ill. App. 3d 263, 267 (2006). "Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer." Pekin, 367 Ill. App. 3d at 267.

Again, the first and second exclusions provide that the PUP will not apply:

"1. To any **occurrence** arising out of any act or failure to act by any person in performing functions of that person's **business**.

2. To any **occurrence** arising out of a **business** or **business property**."

"Business" is defined in the PUP as:

"a) any full of part-time activity of any kind:

1) arising out of or relating to an occupation, trade or profession of an **insured person**; and

2) engaged in by an **insured person** for economic gain, including the use of any part of any premises for such purposes." (Emphasis in original.)

The underlying complaint alleges that Amato was a shareholder and director of Goldblatt's at all times relevant to the counts against him. In addition, the underlying complaint alleges that Amato was a "control person" who exercised control over the general operations of Goldblatt's and had the ability and power to direct and prevent the alleged fraudulent conduct. All counts alleged against Amato arose from his actions as a shareholder and director of Goldblatt's. Given these alleged facts, we find that Amato's activity would qualify as a business activity and therefore, under the business exclusions, Allstate did not have a duty to defend or

1-06-0990

indemnify Amato.

Finally, Amato contends that Allstate had a duty to defend him for the period of time in which coverage was uncertain. Accordingly, Amato avers that he is entitled to reimbursement for fees and costs he incurred in defending the underlying complaint during the period of time that coverage remained uncertain.

In arguing this point, Amato relies on the inapplicable case of General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146 (2005). In General, in responding to its insured's request for defense in an underlying action, the insurer indicated that "the claim may not be covered under the policy." (Emphasis omitted.) General, 215 Ill. 2d at 165. Nonetheless, the insurer defended its insured under a reservation of rights and also filed a declaratory judgment action seeking a determination of no coverage. The insurer subsequently sought reimbursement of defense costs after the trial court entered summary judgment in favor of the insurer, declaring that the insurer had no duty to defend the insured in the underlying litigation. The supreme court found that the insurer was not entitled to reimbursement and "refuse[d] to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties." General, 215 Ill. 2d at 166.

We find that General is inapposite to the instant case. Here, instead of agreeing to defend Amato through a reservation of rights letter, Allstate opted to seek a declaratory judgment stating Amato's conduct was not covered under the PUP. Moreover, in its correspondence with Amato, Allstate explicitly told Amato that his conduct was not covered by the PUP and that he was not

12

entitled to a defense.  Clearly, the holding of General does not apply to this case.

Because the language of the PUP unambiguously did not provide coverage for wrongful detention of property and because the exclusions in the PUP applied to the facts alleged in the underlying complaint against Amato, we find that Allstate did not have a duty to defend or indemnify Amato under that policy.  We further find that Allstate is not entitled to reimbursement of costs or fees incurred in defending the underlying complaint while the dispute concerning coverage under the PUP was pending.  We observe that Amato raises several other contentions; however, in light of these conclusions, those contentions need not be addressed.  Accordingly, we affirm the trial court's entry of summary judgment in favor of Allstate on its complaint for declaratory judgment and on Amato's affirmative counterclaims.

Affirmed.

KARNEZIS and CUNNINGHAM, JJ., concur.