THE BOARD OF EDUCATION OF MAINE TOWNSHIP HIGH SCHOOL
DISTRICT No. 207, Plaintiff-Appellant, v. INTERNATIONAL INSURANCE
COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—02—1359

Opinion filed September 30, 2003.—Rehearing denied November 12, 2003.

Elaine K.B. Siegel & Associates, P.C., of Chicago (Elaine K.B. Siegel, Leonard Saphire-Bernstein, and Kaci L. Holguin, of counsel), for appellant.

Clausen Miller, P.C. (James T. Ferrini, Stephen D. Marcus, and Susan Condon, of counsel), and Tressler, Soderstrom, Maloney & Priess (James A. Pinderski and Wen-Shin Cheng, of counsel), both of Chicago, for appellee.

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff, the Board of Education of Maine Township High School District No. 207 (the school district), filed a declaratory judgment action against defendant, International Insurance Company (International), seeking a determination of coverage for $18 million in asbestos-related property damage under seven insurance polices issued by International from 1985 through 1991 (hereinafter referred to individually by the policy year, i.e., 1985 policy, 1986 policy, etc.). This appeal concerns the parties' cross-motions for summary judgment filed with regard to the 1985, 1986, 1987, 1988 and 1989 policies. The court found that a "latent defect" exclusion for asbestos-related losses in the policies precluded the school district's claims and that asbestos-related costs the school district allegedly incurred pursuant to the Illinois Asbestos Abatement Act (Asbestos Abatement Act) (105 ILCS 105/1 (West 1992)) and its implementing regulations were not a covered loss under the policies' "Ordinance Deficiency Clause." The court granted summary judgment to International and denied the school district's motion for summary judgment.

The school district appeals the court's order regarding the 1986, 1987, 1988 and 1989 policies, arguing that the court erred in entering summary judgment for International on those policies because (1) the policies' ordinance deficiency clause extended coverage over the school district's claims; and (2) supplemental coverage applied to the school district's claims pursuant to the "All-Risk" clause. The school district, having abandoned its claims under the 1985 policy, concedes that summary judgment should be affirmed with regard to the 1985 policy. The school district does not appeal the court's denial of its cross-motion for summary judgment. We affirm summary judgment for International with regard to the 1985 policy and reverse with regard to the 1986, 1987, 1988 and 1989 policies.

## BACKGROUND

In 1979, pursuant to a guidance document published by the Environmental Protection Agency regarding the dangers of asbestos exposure in schools, the school district inspected its schools for asbestos-containing building materials and found such materials in the schools. In 1984, the Asbestos Abatement Act took effect, requiring Illinois schools to identify, contain and remove "all asbestos materials that constitute a significant health hazard" and to repair and maintain those which do not constitute a significant health hazard. *Board of Education of the City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 437, 546 N.E.2d 580, 584 (1989); 105 ILCS 105/2 (West 1992).

In 1985, the school district, as a member of the CLIC Insurance Cooperative, purchased a one-year insurance policy from International for coverage of loss or damage to the school district's property during the policy period. Pursuant to agreement A contained in the "Property Insurance" section of the policy, International agreed, "subject to the limitations, terms and conditions of this Insurance, to indemnify the Insured for all risks of physical loss or damage to All Property of the Insured of every kind and description wherever located occurring during the period of this Insurance." The property insurance section of the policy contained numerous coverage exclusions, including exclusions for wear, tear and contamination, but no exclusion for asbestos-related loss or damage. The 1985 policy did, however, contain an "asbestos endorsement" which excluded losses

"[i]n connection with any claim (i) arising out of or (ii) related to any event or happening, or (iii) directly or indirectly caused by based upon or resulting from:

(a) Asbestos or any asbestos related injury or damage; or

(b) Any alleged act, error, omission or duty involving asbestos, its use, exposure, presence, existence, detection, removal, elimination or avoidance; or

(c) The use, exposure, presence, existence, detection, removal, elimination or avoidance of asbestos in any environment, building or structure."

The school district renewed the policy six times, from 1986 to 1991.

In 1986, International eliminated the asbestos endorsement but added a "latent defect" exclusion to the exclusions subsection of the policy's property insurance section. The new exclusion provided that there would be no coverage for

"[l]oss by latent defect including damage or loss caused by, aggravated by or contributed by the presence of asbestos and all asbestos related products including but not limited to paint, ceiling tile, floor tile, insulation and/or other sources.

UNLESS LOSS BY A PERIL INSURED AGAINST ENSUES AND THEN ONLY FOR SUCH ENSUING LOSS."

This exclusion was included in subsequent polices until the 1990 and 1991 policies, wherein it was slightly modified. The modification is not relevant here.

The property insurance section of the 1985 through 1989 policies also included a "Conditions" subsection consisting of eight clauses, one of which was the ordinance deficiency clause. The ordinance deficiency clause provided:

"Notwithstanding anything contained herein to the contrary, the Company shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement, the Company shall also be liable for such additional costs."

In the 1990 and 1991 policies, the ordinance deficiency clause was changed to state that "[o]nce there is a covered loss, we will be liable for loss caused by enforcement of any state or municipal law, ordinance or code that requires that Insured to repair, rebuild, replace materials or demolish the Insured's property."

The school district allegedly discovered in 1992 and/or 1993 that the majority of its floor and ceiling tiles contained asbestos and were a hazard. The school district abated the asbestos dangers by demolishing, repairing and replacing the asbestos-containing building materials.

In 1992, the school district filed a claim under the 1986 and 1987 policies for its asbestos-related property damage with International. In 1993, after International allegedly failed to respond to the claim, the school district filed a complaint against International for breach of contract pursuant to the 1986 and 1987 polices. In 1995, the school district filed an amended complaint alleging breach of contract of the

1985 through 1991 polices. Count I of the amended complaint requested that the court find coverage under the 1986 and 1987 policies for risks of physical damage or loss resulting from asbestos-containing materials or asbestos in the school buildings and costs of asbestos inspection, removal, abatement and maintenance programs and consequential damages resulting therefrom. Count II requested a similar declaration under the 1985, 1988, 1989, 1990 and 1991 policies.

In 1996, the court granted partial summary judgment to International on the 1990 and 1991 policies. We addressed the school district's appeal from that judgment in *Board of Education of Maine Township High School District 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 684 N.E.2d 978 (1997). As shown above, the latent defect exclusion provision in the 1990 and 1991 polices was essentially the same as that in the 1985 through 1989 policies, as was an exception to the exclusion for "a loss from covered peril that follows; and then only for the following loss." For the purpose of the 1990 and 1991 policies, we determined that "loss or damage caused by, aggravated by, or added to by asbestos-related products is a latent defect excluded from coverage under the 'exclusions' section of the policies," and affirmed the trial court. *Board of Education of Maine Township High School District 207*, 292 Ill. App. 3d at 20, 684 N.E.2d at 983. We held that coverage was similarly excluded pursuant to the contamination, gradual deterioration and "wear and tear" exclusions, given that all the events which caused asbestos fibers to be released into the air constituted ordinary wear and tear. *Board of Education of Maine Township High School District 207*, 292 Ill. App. 3d at 21, 684 N.E.2d at 983.

We found that, "although the 'exceptions' clause would bring within coverage a loss from a covered peril that follows an excluded peril, the clause did not operate [in the instance of the 1990 and 1991 policies] to give back coverage for loss or damage caused by, aggravated by, or added to by asbestos-related products. Such a loss or damage is not a covered peril." *Board of Education of Maine Township High School District 207*, 292 Ill. App. 3d at 21-22, 684 N.E.2d at 983. Our earlier decision did not address the applicability of the ordinance deficiency clause. The ordinance deficiency clause in the 1990 and 1991 policies was vastly different from the clause at issue here, having been changed to require a covered loss as a prerequisite to applicability.

In 2001, the parties filed cross-motions for summary judgment on the 1985, 1986, 1987, 1988 and 1989 policies. The court found, as a matter of law, that the policies were not ambiguous and its determination would be based solely on the instruments themselves and not on

witness testimony regarding the parties' intent. Noting this court's previous decision in *Board of Education of Maine Township High School District 207*, the court held that there was "unequivocally" no liability under the policies for any loss or damage relating to asbestos in any form or under any circumstances pursuant to the latent defect exclusion.

Plaintiff argued that the ordinance deficiency clause reinstated coverage because the school district's losses were occasioned by its compliance with statutory mandates to abate the asbestos hazard. The court disagreed, finding that the ordinance deficiency clause did not negate the asbestos exclusion because the word "also" in the ordinance deficiency clause refers to something which came before, *i.e.*, a covered loss. The court noted that, "[w]ithout a previous covered loss, the ordinance deficiency clause is without a predicate which has to be in existence for the clause to have any real meaning." Having previously determined that asbestos-related damage was not a covered loss, the court, therefore, held that costs of compliance with the abatement statute were not a covered loss. The court granted summary judgment to International and denied the school district's motion for summary judgment. The school district timely appeals the grant of summary judgment to International.

## ANALYSIS

### Summary Judgment

■ Summary judgment is a drastic means of disposing of litigation and should be granted only when the pleadings, depositions, and admissions on file, together with any affidavits, construed strictly against the movant and liberally in favor of the opponent of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871 (1986). " 'When all parties file cross-motions for summary judgment, the court is invited to decide the issues presented as a question of law.' " *Nudi Auto RV & Boat Sales, Inc. v. John Deere Insurance Co.*, 328 Ill. App. 3d 523, 531, 765 N.E.2d 1163, 1169 (2002), quoting *Container Corp. of America v. Wagner*, 293 Ill. App. 3d 1089, 1091, 689 N.E.2d 259, 261 (1997). We review the trial court's entry of summary judgment *de novo*. *Axen v. Ockerlund Construction Co.*, 281 Ill. App. 3d 224, 229, 666 N.E.2d 693, 696 (1996).

### Ordinance Deficiency Clause

■ The construction of an insurance policy and a determination of the rights and obligations thereunder are also questions of law that

we review *de novo* and thus are appropriate for disposition by way of summary judgment. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292, 757 N.E.2d 481, 491 (2001); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993). Our primary objective in construing the policy language is to ascertain and give effect to the intent of the parties to the contract. *Travelers Insurance Co.*, 197 Ill. 2d at 292, 757 N.E.2d at 491. To determine the meaning of the policy language and the parties' intent, we must construe the policy as a whole, taking into account the type of insurance purchased, the subject matter, the risks undertaken and purchased, and the overall purpose of the contract. *Travelers Insurance Co.*, 197 Ill. 2d at 292, 757 N.E.2d at 491; *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078.

    ■ If the words in a policy are clear and unambiguous, there is no need for construction. *Rohe v. CNA Insurance Co.*, 312 Ill. App. 3d 123, 127, 726 N.E.2d 38, 41 (2000). Rather, words that are plain and unambiguous will be accorded their plain, ordinary and popular meaning, and we will enforce the policy according to its terms as written unless to do so contravenes public policy. *Travelers Insurance Co.*, 197 Ill. 2d at 292-93, 757 N.E.2d at 491; *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078; *Rohe*, 312 Ill. App. 3d at 127, 726 N.E.2d at 41. Policy language is not considered ambiguous merely because a term is not defined within the policy or because the parties can suggest creative possibilities for the term's meaning. *Rohe*, 312 Ill. App. 3d at 127, 726 N.E.2d at 41. "The court will not search for ambiguity where there is none." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. If, however, the language of a policy is susceptible to more than one reasonable meaning, such language is ambiguous and will be construed strictly in favor of the insured and against the insurer that drafted the policy. *Travelers Insurance Co.*, 197 Ill. 2d at 293, 757 N.E.2d at 491; *Rohe*, 312 Ill. App. 3d at 127, 726 N.E.2d at 41.

    As the trial court stated, the ultimate issue in this case is whether the ordinance deficiency clause in the 1986, 1987, 1988 and 1989 insurance policies negates the latent defect exclusion for asbestos-related damages in those polices. In *Board of Education of Maine Township High School District 207,* we determined that a similar latent defect exclusion and exception to that exclusion in the 1990 and 1991 policies precluded coverage for asbestos-related damages. *Board of Education of Maine Township High School District 207*, 292 Ill. App. 3d at 22, 684 N.E.2d at 984. "A question of law decided on a previous appeal is binding on both the trial court and the appellate court." *Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.*, 127 Ill. App. 3d

589, 591, 469 N.E.2d 389, 391 (1984). Accordingly, following *Board of Education of Maine Township High School District 207*, we agree with the trial court that, standing alone, the latent defect exclusion in the 1986, 1987, 1988 and 1989 policies precludes coverage for asbestos-related damages.

Although asbestos-related property damage initially falls within the scope of the broad "all risks" clause in the policies *(Board of Education of Township High School District No. 211 v. International Insurance Co.*, 308 Ill. App. 3d 597, 602, 720 N.E.2d 622, 625-26 (1999)), the contracts state that coverage is "subject to the limitations, terms and conditions" of the policies. One such limitation is the latent defect exclusion clause, which serves to specifically exclude asbestos-related property damage from coverage. Since such damage is therefore not a covered peril, the exception to the exclusion, which provides "unless loss by a peril insured against ensues and then only for such ensuing loss," does not serve to reinstate coverage. *Board of Education of Maine Township High School District 207*, 292 Ill. App. 3d at 21-22, 684 N.E.2d at 984.

Coverage of asbestos-related damage is, however, provided in the 1986 through 1989 policies by the ordinance deficiency clause. We find, as a matter of law, that the ordinance deficiency clause in those policies does provide coverage for asbestos-related damages and losses resulting from replacement of material required to meet state or municipal laws, codes or ordinances. In other words, the ordinance deficiency clause negates the asbestos exclusion if the claimed losses were incurred as a result of compliance with statutorily mandated requirements. In fact, we agree with the school district's interpretation of the policies that "the ordinance deficiency clause overcomes all exclusions," including the "wear and tear" and contamination exclusions raised by International.

The language of the ordinance deficiency clause, and of the policy as a whole, is not ambiguous. The words contained therein are clear and susceptible to only a single meaning. The ordinance deficiency clause states in full as follows:

> "Notwithstanding anything contained herein to the contrary, the Company shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement, the Company shall also be liable for such additional costs."

The words "notwithstanding," "herein" and "also" in the above clause are determinative of whether the ordinance deficiency clause

provides coverage for previously excluded damages. Although the parties appear to agree on what the words mean, they do not agree on how those words should be applied.

When used, as here, as a preposition, "notwithstanding" is defined as "[w]ithout prevention or obstruction from or by; in spite of; *** despite," and it "implies the presence of an obstacle." Webster's Second New International Dictionary 1669 (1954). As the trial court noted, "notwithstanding" in essence "wipes out" anything to the contrary. "Herein" means "in or into this (place, or matter, circumstance, etc.)." Webster's Second New International Dictionary 1167 (1954). Giving the words "notwithstanding" and "herein" their plain and ordinary meaning, the introductory phrase "[n]otwithstanding anything contained herein to the contrary" clearly means that the terms of the ordinance deficiency clause apply no matter what the other clauses, terms or conditions in the policy might otherwise provide. In other words, if a loss falls within the scope of the ordinance deficiency clause, i.e., a "loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material," the introductory phrase serves to create coverage where none existed previously under the "all risks" clause or to restore coverage where it had been eliminated by an exclusion.

Although International argues that "herein" applies only to the conditions subsection, nothing in the ordinance deficiency clause, the conditions subsection or the policy as a whole limits the ordinance deficiency clause's application to the conditions subsection. In fact, "herein" makes better sense if applied to the agreement as a whole. Although some conflicts with the coverage provided by the ordinance deficiency clause do arise in the conditions subsection[1], they arise more egregiously in the preceding exclusions subsection, as evidenced by the asbestos exclusion. If the ordinance deficiency clause was not intended to apply to the entire property insurance agreement, limiting language could have been inserted to that effect. The "civil authority" clause, which precedes the ordinance deficiency clause in the property insurance conditions subsection of the policies, expressly states that its terms apply "[n]otwithstanding anything contained in this Insurance, property which is insured under this Insurance is also covered

---

[1]International suggests, as an example of such a conflict, the limiting language in the valuation clause which limits liability to the cost of like size, kind and quality of materials whereas statutory compliance might require replacement with other materials. The ordinance deficiency clause would cover the additional cost of these materials.

against the risk of damage or destruction by civil authority." The ordinance deficiency clause merely substitutes "herein to the contrary" for "in this insurance"; the meaning is the same: no matter what else might be contained in the policy, the specified losses and risks are "also" covered.

We agree with the school district that the word "also" clearly indicates that the insurer is adding responsibility in an area where it felt it had no responsibility. In context, "also" means "in addition; as well; besides; too." Webster's Second New International Dictionary 76 (1954). "Also" serves to provide liability "in addition to" preexisting liability but not, as International argues, in addition to "pre-existing liability for a covered loss." There is absolutely no language in the conditions subsection or elsewhere in the policy limiting application of the condition clauses only to covered losses that have not been otherwise excluded. Some of the condition clauses contain language limiting their application to "any loss hereby insured against" (debris removal clause) or "perils insured against" (removal clause). Other conditions such as the valuation clause and the appraisal clause necessarily apply only to covered losses. However, no clause specifies that it applies only to a loss which has not previously been excluded or that any condition is tied to another condition's limiting language.

Moreover, we do not agree with International that the ordinance deficiency clause operates only as a sub-clause of the valuation clause and that, therefore, because the valuation clause assumes a covered loss in setting valuation limits, the ordinance deficiency clause requires a covered loss. The conditions subsection contains the following eight clauses: valuation ("The Company shall not be liable for loss or damage in excess of: ***"); debris removal; removal clause; appraisal; civil authority clause; ordinance deficiency clause; expense to prevent or reduce loss clause; and automatic acquisition clause. No language in the conditions subsection expressly ties one clause to another or makes any clause subordinate to another. Reading the clauses together, they are clearly independent of each other and concern separate matters, the valuation clause being the most detailed among them but certainly not controlling over the other seven clauses.

The insuring agreement states that "[International] agrees, subject to the limitations, terms and conditions of this Insurance, to indemnify the Insured for all risks of physical loss or damage to All Property of the Insured *** occurring during the period of this Insurance." It is International's *agreement* to indemnify the school district for all risks of loss or damage which is subject to the limitations, terms and conditions. That agreement is modified by those limitations and conditions, one of which excludes coverage for asbestos-related

losses while another extends coverage for losses incurred due to statutorily required replacement of materials, no matter what else the agreement might state. Nothing in the policy indicates that the conditions are subordinate to the exclusions. Indeed, the "all risks" agreement states that coverage is "subject to the limitations, terms and conditions of this Insurance." It does not specifically mention exceptions, although an exception is certainly a limitation. Clearly exceptions and conditions are to be considered on the same footing unless, as here, qualifying language such as "[n]otwithstanding anything contained herein to the contrary" serves to change that standing.

■ Examining the property insurance agreement as whole, we find that, initially, all risks are covered. The exclusion subsection then eliminated coverage for specific losses, including asbestos-related losses. Subsequently, the conditions subsection added, expanded and/or reinstated coverage for various losses/costs such as removal of "debris remaining after any loss hereby insured against"; "expense and damage occasioned by removal from the premise endangered by the perils insured against or removed for preservation"; and "also" for "risk of damage or destruction by civil authority," "loss occasioned by enforcement" of statutory requirements, and "such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this Insurance."

The coverage provided by the assorted condition clauses consists of coverage for losses which are not evident as being covered under the "all risks" agreement. For example, although it might be obvious that the cost of replacing a roof damaged by a tree falling on it is a covered loss, it would not be evident that the cost of removing the debris remaining after the roof has been replaced is covered. The debris removal clause provides that coverage just as the ordinance deficiency clause "also" provides coverage for statutorily mandated replacement. It makes no sense to require that a loss covered by the ordinance deficiency clause be a covered loss, i.e., a loss not previously excluded. The ordinance deficiency clause then adds nothing to the coverage since the reason for a covered loss is irrelevant. To use the previous example, under the "all risks" agreement, whether done pursuant to statutory mandate or because a tree fell on it, replacement of a roof is a covered loss. The court's and International's interpretation of the ordinance deficiency clause renders the word "also" redundant because, under their interpretation, no coverage is added which did not exist before. As used in the later three condition clauses, including the ordinance deficiency clause, "also" serves as an acknowledgment that the coverage provided is in addition to a covered loss (i.e., an "all risks" loss not otherwise excluded) or losses covered under any of the other conditions.

Having found that the ordinance deficiency clause extends coverage over the previously excluded asbestos-related losses if those losses were incurred in the enforcement of state or municipal laws, codes or ordinances, we reverse the grant of summary judgment to International on the 1986, 1987, 1988 and 1989 policies.

In addition, we find that, given that the ordinance deficiency clause extends coverage for asbestos-related losses, the supplemental coverage provided by the "debris removal," "removal" and "expense to reduce or prevent loss" clauses also applies to asbestos-related losses if those losses triggered coverage under the ordinance deficiency clause.

## Timeliness of Suit

International argues that it should be awarded summary judgment because the school district's suit is time barred. Under the "General Conditions" section of the policies, the "litigation proceedings clause" provides:

"No suit to recover on account of loss under this Insurance shall be brought until ninety days after the proof of loss shall have been furnished, nor at all unless commenced within twenty-seven months from the date upon which loss occurred, if such loss is within the knowledge of the Insured; if not, the twenty-seven months shall begin upon notice to the insured of such loss or claim."

International asserts that the school district's suit is untimely because it was filed on July 26, 1993, more than 27 months after the school district first had notice of its loss given evidence in the record that the school district began its asbestos abatement program in the 1980s. The school district responds that the general conditions only apply to agreements C (general liability) and F (auto liability) in section II of the contract, the casualty insurance section, rather than to the entire contract and that the litigation proceedings clause therefore does not apply to section I, property insurance agreement A, at issue here. We disagree.

Of the 13 agreements in the contract, only agreements C and F in section II specifically incorporate the general conditions, providing that the C and F coverages are "subject to limitations, terms and conditions hereunder mentioned in Section II, General Conditions, or added hereto by endorsement." However, reading the contract as a whole, it is clear that the general conditions apply to the entire contract, including the property insurance agreement under which the school district is claiming.

There is no overall statement in the "General Conditions" section limiting the general conditions from being applied to the entire

contract. In the three general condition clauses where a restriction is necessary, the clause at issue specifically limits that condition's applicability (two nuclear exclusion clauses limit their applicability to sections I and II; part 2 of the "name of insured" clause limits its applicability to section II, agreement F). The other clauses have no restrictions and can be presumed to apply to the entire contract.

"General" is defined as "of or pertaining to the whole of a body ***; held throughout or for the whole or in every division"; and "pertaining to, affecting, or applicable to, each and all of the members of a class, kind, or order; universal within the limits of the reference." Webster's Second New International Dictionary 1043 (1954). "General denotes that which pertains to all, or almost all." Webster's Second New International Dictionary 1044 (1954). Therefore, taking the "general conditions" section title at its plain meaning, the section would appear to be intended to apply to the entire contract.

This determination is reinforced by an examination of the general conditions themselves. The litigation proceedings clause is one of 24 clauses listed in the "General Conditions" section at the end of each policy. Besides setting a time limit for suit, the clauses provide, among other things, that the insurance contract embodies all agreements existing between the parties; the contract may be cancelled at any time by International upon 30 days' written notice to the insured; if the insured goes bankrupt, International is not relieved of payment of any claims; International's coverage is to be considered excess coverage if the insured has other insurance covering the same loss; International will promptly pay its liabilities under the contract; and International will be subrogated to all rights the insured may have against other parties with respect to claims paid by International. These are all clearly conditions that apply to the entire contract.

■ For the above reasons, having examined the general conditions section in the context of the contract as a whole, we conclude that the general conditions apply to the entire contract and that, therefore, the litigation proceedings clause does apply to the school district's suit. However, timeliness of suit under the litigation proceedings clause depends on a determination of several factual questions, including when or whether proof of loss was furnished, the date upon which loss occurred, and whether the loss was in the insured's knowledge. Although there is evidence in the record regarding these questions, the evidence conflicts and the parties' interpretation of the evidence differs greatly. Given that genuine issues of material fact exist regarding the timeliness of the suit, summary judgment on this issue is not warranted.

Although we find that coverage exists under the policies for

asbestos-related losses incurred as a result of compliance with statutory requirements, whether the school district's losses triggered the ordinance deficiency clause remains a question of fact to be determined by the trier of fact. Similarly, the school district's arguments regarding issues that the trial court did not reach, such as whether International timely received notice of the claim, whether asbestos-related losses were continuous during the policy period(s) and whether the losses were fortuitous all concern genuine issues of material fact which cannot be decided by summary judgment. These issues will be decided, if appropriate, by the court on remand.

The school district does not appeal the court's denial of its cross-motion for summary judgment. Suffice it to say that, given the genuine issues of material fact remaining in the case, the court was entirely correct in doing so.

For the reasons stated above, we affirm the court's grant of summary judgment to International on the 1985 policy; reverse the court's grant of summary judgment to International on the 1986, 1987, 1988 and 1989 policies and remand for further proceedings on those four policies; and affirm the court's denial of summary judgment to the school district.

Affirmed in part; reversed and remanded in part.

HOFFMAN, P.J., and HALL, J., concur.