THIRD DIVISION
DECEMBER 26, 2007

1-05-1732

| | | |
|---|---|---|
| BOARD OF EDUCATION OF TOWNSHIP HIGH | ) | Appeal from the |
| SCHOOL DISTRICT NO. 211, COOK COUNTY, | ) | Circuit Court of |
| ILLINOIS, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellant and Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 00 CH 8989 |
| | ) | |
| TIG INSURANCE COMPANY, as Successor by Merger | ) | |
| to International Insurance Company, | ) | Honorable |
| | ) | Mary Anne Mason, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The Board of Education of Township High School District No. 211, Cook County, Illinois (the Board), appeals from an order of the circuit court of Cook County granting summary judgment to TIG Insurance Company, as successor by merger to International Insurance Company (TIG), on the Board's claim for coverage of its asbestos-related damages. The trial court held that the Board had breached its notice obligations to TIG under the applicable policies. However, in the event that we found as a matter of law that notice was sufficient, the trial court ruled in the alternative that it would grant summary judgment for the Board, an order from which TIG has filed a cross-appeal. We do not reach the findings upon which the trial court based that alternative ruling, for we determine that the trial court correctly granted summary judgment for TIG on the basis of the Board's breach of its notice obligations. We also deny TIG's motion, taken with the case, to strike certain portions of the Board's amended opening brief.

BACKGROUND

The two insurance policies issued to the Board by TIG covered the periods from April 1, 1981, through April 1, 1984, and April 1, 1984, through April 1, 1986. The pertinent provisions of both policies required that the Board "immediately" give notice "of any occurrence the cost of which is likely to result in payment" by TIG pursuant to its insurance policies relating to the Board. In this instance the damages arose from friable asbestos, which is asbestos subject to crumbling from hand pressure, thus releasing carcinogenic asbestos fibers and dust into the air. It is undisputed that the Board first learned that asbestos in some of its high school buildings had become friable in June 1983, as reported to it by ARCON Associates, an architectural firm hired by the Board to inspect the buildings at all five of its high schools. At the Board's request, ARCON then prepared an asbestos remediation program, which it submitted to the Board in August 1983. In that report, ARCON recommended that the Board remove all asbestos from all five of its high schools, and in January 1984, the Board adopted that recommendation. The Board began these remedial efforts in June 1985. The cost of these removal efforts between June 1984 and July 1986 was more than $2.6 million. When removal was finally completed in 1994, the total cost was over $17.5 million. No formal written notice of an "occurrence" was given to TIG by the Board until July 17, 1991, more than eight years after the Board first learned that it had friable asbestos in some of its school buildings.

The record establishes that the Board undertook numerous asbestos-related actions between the summer of 1983 and January 1984. The Board sent its business manager, Michael Hyde, to a seminar on asbestos issues at Georgia Tech. The Board hired the former Mid-Atlantic coordinator

for the Environmental Protection Agency to tour the Board's buildings as an asbestos consultant. During the spring of 1984, the Board consulted with ARCON and others regarding safety issues, including air quality levels arising from asbestos. In compliance with regulations issued by the Environmental Protection Agency (EPA), the Board posted signs in its buildings alerting the reader to the presence of asbestos. After the posting of these signs, an individual who was a representative of the Board's insurance broker and who was also TIG's designated agent for receipt of notices under the policies toured some of the Board's buildings, including Hoffman Estates High School in September of 1983, and again in September of 1984. In the spring of 1985 the Board asked TIG for the issuance of an endorsement to the existing insurance policies naming a contractor as an additional insured in connection with asbestos removal at Fremd High School.

The Board first sued various asbestos manufacturers, distributors, and sellers on May 15, 1985, seeking damages for expenses incurred in connection with the removal of asbestos from its buildings. Some of those defendants, including Carey-Canada, Inc., W.R. Grace, and U.S. Mineral Products, were insured by TIG. Counsel for those defendants also appeared of record in this cause. TIG received no formal notice of any "occurrence" or claim by the Board until it received the Board's letter dated July 17, 1991, stating "this is the notice of claim on behalf of [the Board] for asbestos property damage caused at Schaumburg, Fremd and Conant High Schools of the [Board]." A loss report attached to the letter stated that the Board had spent nearly $15 million on asbestos removal projects to date. TIG rejected the Board's claim and the Board filed an action in the circuit court of Cook County seeking a declaratory judgment against TIG to recover over $20 million. After the filing of cross-motions for summary judgment, the trial court found for TIG on the ground that the

1-05-1732

Board had failed to "immediately" give TIG notice of an occurrence causing costs which would "likely result in payment" by TIG.

ANALYSIS

Summary judgment should only be granted if a strict construction against the movant of all the pleadings, depositions, admissions, and affidavits on file establishes no genuine issue of material fact and the entitlement of the moving party to judgment as a matter of law. Purtill v. Hess, 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871 (1986). When, as occurred here, the parties file cross-motions for summary judgment, they are asking the trial court to decide the outstanding issues as a matter of law. Board of Education v. International Insurance Co., 344 Ill. App. 3d 106, 111, 799 N.E.2d 817, 822 (2003). Our review is de novo. Board of Education, 344 Ill. App. 3d at 111, 799 N.E.2d at 822.

We agree with the trial court that the pertinent words of the two policies are clear and unambiguous, requiring no construction. Rohe v. CNA Insurance Co., 312 Ill. App. 3d 123, 127, 726 N.E.2d 38, 41 (2000). Enforcement of these plain terms does not violate public policy. Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 292-93, 757 N.E.2d 481, 491 (2001). The District learned of the presence of friable asbestos in some of its buildings as early as June of 1983 when it received the report from ARCON Associates that it had commissioned. Yet it gave no formal notice to TIG until it sent a letter dated July 17, 1991, asserting a notice of claim for asbestos property damage at three of its schools. By any measure, a notice that is sent over eight years after an occurrence cannot be considered "immediate." This is evident upon application of the four factors commonly used to determine the reasonableness of notice as applicable to insurance coverage: (1) the language of the policy itself; (2) whether the insured can be considered sophisticated in the instant

4

area of commerce and insurance; (3) when the insured became aware of the occurrence; and (4) the diligence of the insured in determining the availability of coverage after it learns of the occurrence. Ankus v. Government Employees Insurance Co., 285 Ill. App. 3d 819, 825, 764 N.E.2d 865, 870 (1996). Two other factors commonly cited are whether the insurer was prejudiced by the delayed notice and when the insurer had actual notice of the occurrence. It is noteworthy that neither of these factors is dispositive. Our supreme court has held that the lack of prejudice to the insurer will not excuse a lack of timely notice. Country Mutual Insurance Co. v. Livorsi Marine, Inc., 222 Ill. 2d 303, 317, 856 N.E.2d 338, 346 (2006). Similarly, the insurer's actual notice does not excuse the insured from its responsibility to give reasonable notice to the insurer; thus, the actual notice received by the insurer must have been communicated within a reasonable time. Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co., 70 Ill. App. 3d 296, 301, 388 N.E.2d 253, 257 (1979).

In this cause there can be no dispute that the language of the policies required *immediate* notice to TIG by the Board when the Board *knew* of an occurrence which would cause it to incur costs likely to be paid by TIG. The Board attempts to argue, as it did in the trial court, that the notice requirement was not a condition precedent to coverage by TIG. We disagree. Such provisions have been held to be conditions precedent to coverage and cannot be ignored by the insured. Montgomery Ward & Co. v. Home Insurance Co., 324 Ill. App. 3d 441, 447, 753 N.E.2d 999, 1004 (2001). We concur with the trial court that there is no merit to the Board's contention that it was not aware of any legal precedent for an action against TIG in the first years after the discovery of friable asbestos in their schools. As early as 1989 our supreme court found that buildings contaminated by asbestos, to the extent that remedial action was required, were damaged. Board of Education of the City of

Chicago v. A, C & S, Inc., 131 Ill. 2d 428, 449, 546 N.E.2d 580, 590 (1989). Furthermore, in 1989 the Board sued a number of asbestos manufacturers, distributors and sellers, seeking to recover damages for its costs in removing asbestos from its buildings. Thus the Board had already recognized by that date that it had sustained damages because of the asbestos in its buildings. Yet more than two additional years passed before the Board sent notice to TIG. The Board attempts to argue that these same lawsuits should have placed TIG on notice of an occurrence that was likely to result in claims paid by TIG to the Board. We find this argument unpersuasive. We will not hold an insurer liable to *investigate* and *determine* whether there are possible collateral claims forthcoming from other insureds when some of the insurer's insureds are sued for damages. Such a holding would vitiate the policy language requiring the Board to immediately notify TIG when it learned of such an occurrence. This language is deemed to define and control the duties of the parties to an insurance contract. American Country Insurance Co. v. Bruhn, 289 Ill. App. 3d 241, 247, 682 N.E.2d 366, 379 (1997). We note that the lawsuit to which the Board refers to buttress its argument was filed two years after the Board's discovery that it had a problem with friable asbestos in its schools. Thus its failure to notify TIG of the occurrence within two years was unreasonable.

The Board also asserts that we are dealing with numerous occurrences, each of which created a different notice obligation, as the asbestos in the Board's buildings continued to enter into a friable state. This argument is unavailing. Under this theory, the court would have to determine the exact time at which each separate section of asbestos in the many buildings owned by the Board became friable. The Board cites Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd., 223 Ill. 2d 407, 860 N.E.2d 280 (2006), in support of its argument. But Nicor involved the separate actions

of many different Nicor employees or contractors who were employed to substitute safe gas meters for ones containing mercury. In doing so there were occasions when some of the mercury spilled, contaminating some work areas. Under those circumstances we can understand why the court in Nicor concluded that it was dealing with numerous occurrences, so that the excess insurance companies were not liable to indemnify Nicor where the self-insurance limits for each occurrence did not exceed the amount of damages. Nicor, 223 Ill. 2d at 432-40, 860 N.E.2d at 295-99. We find the facts at bar to be much closer to those of a case cited with approval in Nicor, United States Gypsum Co. v. Admiral Insurance Co., 268 Ill. App. 3d 598, 643 N.E.2d 1226 (1994). There, United States Gypsum, a manufacturer of asbestos, was seeking coverage from numerous insurance companies under policies issued between the 1930s and 1984 for actions filed against it by numerous property owners alleging property damage caused by United States Gypsum's product. The defending insurance companies alleged that United States Gypsum could not establish that fiber was released in every policy period, and the trial court agreed, finding that each discovery of asbestos-containing materials would constitute a separate occurrence. But the reviewing court recognized that it would be virtually impossible to determine when each release of fibers occurred (United States Gypsum, 268 Ill. App. 3d at 646, 643 N.E.2d at 1257) and therefore held that the release of the asbestos fibers should be viewed as one occurrence (United States Gypsum, 268 Ill. App. 3d at 649, 643 N.E.2d at 1258-59). In this case we do not have multiple insurers, but we have multiple policies, and we have the same situation in which asbestos is continuously becoming friable. Thus we find that there was only one occurrence here, triggering the notice requirement, and that trigger was when the Board first learned that some of the asbestos in its buildings was friable.

7

It is also clear from the record that we are not dealing with an unsophisticated insured. Within two months of the discovery of the occurrence, the Board had commissioned and received the analysis of a consulting firm and by January of 1984 it had decided to remove all the asbestos from all of its buildings. In or around 1984 it retained an attorney to represent it in matters relating to asbestos. It sought the advice of experts in the field and ensured that certain staff received training related to asbestos abatement. This sophistication on the part of the Board belies its assertion that notice was given within a reasonable time to TIG.

The Board's knowledge of the occurrence came eight years before it gave formal notice to TIG. There is no satisfactory explanation for the delay. We also note that the Board was already represented by counsel with asbestos experience, yet it did not examine its policies with TIG to determine whether TIG was liable under the policies in question.

The facts establish ample support for TIG's claim that it was prejudiced by the delay in notice. By the time TIG received formal notice from the Board in 1991, the Board was well into its program of removing all asbestos from all of its schools. Indeed, it had expended many millions of dollars. Therefore TIG had already lost its ability to independently determine which asbestos in these buildings was friable and thus presented a danger to the occupants and users of the schools. At oral argument, counsel for TIG pointed out that by the time notice was given it was impossible for TIG to determine its obligation under the policies, for much of the expenditures had occurred years earlier.

On the final factor of actual knowledge of the occurrence by TIG, the Board argues that such notice can be attributed to TIG as early as September 1984 when TIG's agent toured some of TIG's buildings, which bore signs warning of the presence of asbestos. First, there is nothing in the record

establishing that the agent actually saw those signs. And even if he did, as the trial court noted, the mere presence of asbestos in some of the Board's buildings would not have sufficed to give the agent notice that a claim for damages from friable asbestos was forthcoming.

For the reasons discussed, we find that the trial court correctly ruled that the Board failed to satisfy the condition precedent of notice to TIG as required by both of the insurance policies which formed the basis of this action. Our determination eliminates any need for us to review the validity of the trial court's alternative holding, that barring any failure of notice, it would have granted summary judgment for the Board.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS and KARNEZIS[*], JJ., concur.

---

[*]Justice Karnezis participated in the oral argument in this case before transferring to the Second Division.