In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1144

SOARUS L.L.C.,

*Plaintiff-Appellant*,

*v.*

BOLSON MATERIALS
INTERNATIONAL CORP. and
TIMOTHY J. HEENAN,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-10652 — **Charles R. Norgle**, *Judge*.

ARGUED SEPTEMBER 14, 2018 — DECIDED OCTOBER 1, 2018

Before BAUER, HAMILTON, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. This appeal turns on the construction under Illinois law of provisions in a nondisclosure agreement. The dispute arises out of Bolson Materials International Corporation's inclusion in a patent application of particular information Soarus, L.L.C. believed was protected from dis-

closure by the parties' agreement. The district court, exercising diversity jurisdiction, determined that the agreement's plain language controlled and revealed no breach of contract by Bolson. We agree and affirm.

**I**

Bolson develops products and processes for use in the 3D printing industry, and Soarus, which operates out of British Columbia, is a distributor of specialty polymers, including a material known as G-Polymer developed by Nippon Synthetic Chemical Industry Co., Ltd. In 2009, Bolson and Soarus began discussing Bolson's acquisition and use of G-Polymer in connection with developing a new 3D printing process. For its part, Soarus sought to protect its rights and interest in G-Polymer while also allowing for its potential entry into the lucrative 3D printing market.

The parties executed a nondisclosure agreement, which they titled as a Secrecy Declaration and we refer to as the NDA to align with commercial custom. The parties exchanged several rounds of correspondence discussing the terms of the prospective agreement and, more specifically, the intellectual property rights expected to result from Bolson's use of G-Polymer. The discussions led to the execution of the NDA and Soarus, in turn, providing Bolson with confidential information regarding G-Polymer and samples.

Shortly after executing the NDA, Bolson filed a provisional patent for the 3D printing process it developed using G-Polymer. The filing resulted in Bolson receiving U.S. Patent No. 8,404,171, which the parties call the '171 Patent, on March 26, 2013. Soarus later claimed that Bolson's application for the '171 Patent revealed confidential information about

G-Polymer, in violation of the NDA. Litigation ultimately ensued in the Northern District of Illinois.

The district court granted Bolson's motion for summary judgment, concluding that the plain meaning of the NDA, while conferring generally broad confidentiality protection on Bolson's use of information about G-Polymer, authorized Bolson to use such confidential information in pursuing a patent in the specific area of the fused deposition method of 3D printing. Accordingly, the district court determined that Bolson's inclusion of otherwise confidential information about G-Polymer in its patent application did not constitute a breach of the NDA.

Soarus appeals, renewing the position it advanced in the district court.

## II

We review questions of contract interpretation *de novo*. See *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). Because the case comes to us following the district court's exercise of diversity jurisdiction, we undertake that review by applying Illinois law. See *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 705 (7th Cir. 1995).

If the "words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). Indeed, it is only if the NDA is ambiguous that Illinois law would turn us to extrinsic evidence to determine the parties' intent. See *id*. Of course, "a contract is not rendered ambiguous merely because the parties disagree on its meaning." *C. Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004).

The NDA is a short two pages and, as would be expected, imposes in its early paragraphs broad restrictions on Bolson's use of confidential information. Take, for instance, paragraph 2, which states that "Bolson shall hold in the strictest confidence the Samples, Confidential Information and the results of the Evaluation, taking all reasonable measures to ensure the confidentiality and limitations on use." From there the NDA proceeds to reinforce and then to limit these restrictions, and the precise language used to do so is at the heart of the dispute that landed the parties in the district court.

Our resolution turns largely on the interplay of paragraphs 6 and 10 of the NDA:

> 6. Bolson shall not file any application for a patent or other intellectual property using any piece of Confidential Information or the results of the Evaluation without prior written consent of Nippon.

> 10. Notwithstanding Article 6 hereof, Bolson is free to patent and protect any new applications using G-Polymer® in the specific area of Fused Deposition Method Rapid Prototyping Equipment and Methods.

By its terms, paragraph 6 imposes an obligation on Bolson to refrain from using confidential information in any patent application absent Nippon's written consent. In this way, paragraph 6 reinforces the protection other provisions in the NDA afford to confidential information. But paragraph 10 creates an exception to those protections. It does so by expressly referencing the limitations imposed by paragraph 6, but then broadly excepting them with the language

"Notwithstanding Article 6 hereof" before making plain that "Bolson is free to patent and protect any new applications using G-Polymer®" in the specified 3D printing process.

The district court construed these provisions of the NDA the same way, emphasizing that the language employed at the outset of paragraph 10—"Notwithstanding Article 6 hereof … "—made clear that the authorization conferred on Bolson to freely patent and protect new applications of G-Polymer in the specified 3D printing process was not confined by the NDA's preceding confidentiality restrictions. As the district court observed, the ordinary meaning of notwithstanding is "in spite of" and thus paragraph 10 is best and most plainly read as creating an exception to paragraph 6.

This construction of the NDA finds sound support in Illinois law. See *Board of Educ. of Maine Tp. High School Dist. No. 207 v. International Ins. Co.*, 799 N.E.2d 817, 824 (Ill. App. Ct. 2003) (explaining that "notwithstanding is defined as without prevention or obstruction from or by; in spite of, despite, and it implies the presence of an obstacle … notwithstanding, in essence wipes out anything to the contrary") (internal citations omitted); see also *Central Illinois Public Service Co. v. Allianz Underwriters Ins. Co.*, 608 N.E.2d 155, 157 (Ill. App. Ct. 1992) (articulating same meaning of "notwithstanding" in a contract setting); accord *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 939 (2017) (stating, albeit in the context of interpreting a statute, that "[t]he ordinary meaning of notwithstanding is in spite of, or without obstruction from or by").

Soarus disagrees and asks us to read paragraph 10 as simply making plain that paragraph 6 in no way limits

Bolson's ability to pursue a patent for the specified 3D printing process. Paragraph 10 does so, Soarus reasons, by leaving intact the broad protections the NDA otherwise confers on confidential information. As an overarching matter, Soarus urges us to avoid reading paragraph 10 in any way at odds with the NDA's commercial purposes. And on this score Soarus contends that no reasonable company would seek to protect the confidentiality around a new product by entering into an agreement that permitted a counterparty to disclose those confidences in a public filing with the U.S. Patent Office.

Contrary to Soarus's construction, paragraph 10 does more than acknowledge or preserve Bolson's patent rights. Indeed, if that was the sole purpose of paragraph 10, there was no reason for the parties to have opened that paragraph by carving out any limitation imposed by paragraph 6. See *Thompson*, 948 N.E.2d at 47 ("A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used."). The existence of the "Notwithstanding Article 6 hereof" language signals a different intent—to create an exception to the limitation paragraph 6 imposed on Bolson's use of confidential information in any patent application. See *William Blair and Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 2005) (explaining that "in the absence of ambiguity, a court must construe a contract according to its own language, not according to the parties' subjective constructions").

Put differently, if Soarus was right about the meaning of paragraph 10, there was no reason to create an exception with respect to paragraph 6: the parties instead could (and should)

have stated in clear and precise terms, as Soarus would now have it, that Bolson was free to patent and protect the new 3D printing method so long as doing so did not disclose confidential information without the consent of Soarus. Employing that language (or any number of similar formulations) in paragraph 10 would not have been difficult, especially for commercially-sophisticated parties. See *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 733 N.E.2d 718, 725 (Ill. 2000) (emphasizing that sophisticated businesses are capable of protecting their own interests and allocating risks in a negotiation process); *Wachta v. First Federal Sav. & Loan Ass'n of Waukegan*, 430 N.E.2d 708, 714 (Ill. App. Ct. 1981) ("It is assumed the author wanted the words it chose to be used and it cannot complain when a construction favorable to the opposing party is adopted.") (internal citations omitted).

With the meaning of paragraph 10 and other applicable provisions of the NDA clear and unambiguous, Illinois law requires us to decline Soarus's invitation to afford substantial, if not controlling, weight to the commercial purposes it believes undergird the NDA. Nor are we permitted in the absence of ambiguity to consider extraneous evidence. *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984) ("Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids.").

For these reasons, the district court correctly concluded that Bolson did not breach the NDA. We AFFIRM.