No. 2--07--0586          Filed: 5-8-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MEDSTRATEGIES CONSULTING GROUP, LTD., STEVEN D. BUSH, and NICHOLAS LOISE, | ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 03--L--224 |
| DAVID P. SCHMIEGE, MEDSTRATEGIES, INC., and MEDSTRATEGIES MANAGEMENT GROUP, LTD., | ) ) ) ) ) | Honorable |
| Defendants-Appellants. | ) ) | Donald J. Fabian, Judge, Presiding. |

JUSTICE GROMETER delivered the opinion of the court:

Plaintiffs, Medstrategies Consulting Group, Ltd., Steven D. Bush, and Nicholas Loise, sued defendants, David P. Schmiege, Medstrategies, Inc., and Medstrategies Management Group, Ltd., with respect to Schmiege's dealings with Medstrategies Consulting Group, Ltd. The parties ultimately entered into a settlement agreement and mutual general release (the Agreement), which provided that Schmiege would make 60 monthly payments of $416.66 to Bush, totaling $25,000. The Agreement further provided that, if Schmiege failed to make a timely payment and failed to cure his default within 10 days of notice thereof, the settlement amount would be converted from $25,000 to $79,000. When Schmiege missed a payment and failed to submit the payment within the 10-day grace period, Bush moved for enforcement of the Agreement and for entry of judgment in the

amount of $79,000, less payments previously received. The trial court entered judgment in favor of Bush.

Schmiege timely appealed. The issues presented are: (1) whether the provision of the Agreement that increased the amount to be paid from $25,000 to $79,000 in the event of a missed monthly payment is an unenforceable penalty; and (2) whether Bush's acceptance of the missed monthly payment and subsequent payments waives Schmiege's alleged breach of the Agreement. For the reasons that follow, we reverse, based on our conclusion that the provision is an unenforceable penalty.

BACKGROUND

Plaintiffs filed their original complaint on May 1, 2003. After the filing of multiple motions to dismiss and two amended complaints, the parties agreed to participate in a mediation conference to resolve their disputes. In October 2004, the parties executed the Agreement, and the case was dismissed.

The Agreement provided, in pertinent part, as follows:

"2. Settlement Terms. In full satisfaction of any and all claims the Parties have or may have against each other, the Parties agree to the following terms of settlement.

a. Payments to be made by Schmiege: Schmiege shall pay to Bush ***
on the first of each month, beginning October 1, 2004 and continuing through
and including September 1, 2009 *** the amount of $416.66 per month, for
a total of $25,000.00 (the 'Settlement Amount') ***.

b. Default in Payments and Opportunity to Cure: If Schmiege fails to
deliver any payment by the 1st of such month, then Bush *** shall be entitled

to provide written notice to Schmiege *** and Schmiege shall have ten (10) days within which to cure said default (the 'Cure Period'). *** In the event Schmiege fails to cure any such default within the Cure Period the Settlement Amount shall immediately be deemed converted from $25,000.00 to $79,000.00 (the 'Revised Settlement Amount') without any further action of the parties. Bush shall be entitled to file a motion to enforce this Settlement Agreement and for entry of a judgment in the Litigation for the Revised Settlement Amount (less any amounts previously paid by Schmiege hereunder)."

On April 30, 2006, Schmiege mailed his May payment. However, when Bush attempted to deposit the check, Bush was told by the bank that there were insufficient funds to pay the check. On May 30, 2006, Bush sent written notice to Schmiege that he was in default on the Agreement and that he had 10 days to cure the default. According to Schmiege, he did not receive the notice. In any event, Schmiege did not cure the default within the 10-day grace period.

On June 21, 2006, Bush moved for enforcement of the Agreement and for entry of judgment, based on section 2(b) of the Agreement. Bush sought a judgment for $79,000 (less $7,916.67 in payments previously made by Schmiege) plus attorney fees and costs.

While Bush's motion for enforcement was pending, Bush received monthly payments from Schmiege totaling $2,916.68. This amount included the missed May 2006 payment, which Schmiege mailed when he received the motion for enforcement and first learned that his check had been returned. Bush did not deposit the payments when he received them. Instead, he held them, awaiting the outcome of his motion to enforce. However, as the months passed without a ruling on

his motion, Bush became concerned that the checks would lapse and that such lapse might be interpreted as a waiver of his rights under the Agreement. So, on November 22, 2006, Bush deposited the checks.

On January 12, 2007, Schmiege filed a response to Bush's motion, arguing that the provision of the Agreement "calling for a payment in excess of $50,000 for missing one $416.67 [sic] installment amount[s] to an unenforceable penalty." Schmiege also argued that he was not properly notified of the missed payment and that he did not receive actual notice of the missed payment.

Following a hearing on February 6, 2007, the trial court found that Schmiege was in default under the Agreement and that the provision providing for an increased settlement amount was not an unenforceable penalty. However, the court determined that Bush had waived his right to the increased amount by depositing the installment payments subsequently provided by Schmiege.

On March 7, 2007, Bush moved for reconsideration, arguing that the trial court erred in finding waiver. The trial court agreed, and on May 14, 2007, it entered judgment for Bush for $79,000, less amounts previously paid by Schmiege, along with attorney fees in the amount of $14,455. Schmiege timely appealed.

ANALYSIS

The issue is whether section 2(b) of the Agreement is an unenforceable penalty. We review the issue de novo. See Med+Plus Neck & Back Pain Center, S.C. v. Noffsinger, 311 Ill. App. 3d 853, 860 (2000).

Schmiege and Bush interpret the provision quite differently. Schmiege maintains that section 2(b) of the Agreement imposes a $54,000 penalty for missing a single installment payment. He argues that the entry of judgment in excess of three times the settlement amount for making a single

late payment is excessive and unreasonable compared to any damages Bush suffered as a result of the late payment. On the other hand, Bush maintains that section 2(b) of the Agreement provides a discount to Schmiege on the amount owed (which according to Bush is $79,000) so long as Schmiege makes timely payments. We agree with Schmiege and find that, because there is no basis upon which to conclude that $79,000 represents a reasonable approximation of what Bush would have received had he litigated the matter, the provision is an unenforceable penalty.

The Seventh Circuit's decision in Scavenger Sale Investors, L.P. v. Bryant, 288 F.3d 309 (7th Cir. 2002), guides our resolution of this issue. In Scavenger Sale, the plaintiff sued the defendant for money due under a loan agreement. The district court granted summary judgment for the plaintiff, leaving open the final calculation of the unpaid balance. Thereafter, the parties settled their differences and agreed that the amount due was $1.6 million. They further agreed that the court would enter judgment in that amount plus 15% interest unless the defendant promptly paid $1 million plus 12% interest. After the defendant made payments totaling $750,000, he stopped making payments. The plaintiff asked the court to enter judgment for $1.6 million as provided in the settlement agreement. The court rejected the plaintiff's request, and it instead entered judgment for $1 million, less payments previously made. The court concluded that an obligation to pay $1.6 million based on a failure to pay $1 million would result in a $600,000 "penalty." Scavenger Sale, 288 F.3d at 310-11. The plaintiff appealed.

On appeal, the Seventh Circuit rejected the district court's conclusion that the $600,000 was a penalty. Rather, it characterized the $1 million option as a " 'discount' " for prompt payment. Scavenger Sale, 288 F.3d at 311. It stated:

"Everything depends on which end of the telescope one looks through. In contract law a 'penalty' is a payment that exceeds a reasonable estimate of the loss from breach. [Citation.] Determining whether a liquidated-damages clause is a penalty can be hard for the same reason the parties thought it hard to calculate actual damages in the first place: what's the benchmark against which the stipulated damages will be compared to determine whether they are a penalty? Here the magistrate judge used $1 million as the benchmark, but this amounts to saying that all settlements entail penalties, because parties resolve their dispute for some fraction of the original claim. Parties settle litigation with the expectation that, if the deal falls through, each side retains its legal entitlements. A judgment in the amount of the original legal entitlement can't be called a 'penalty' for the collapse of the settlement; it is instead the non-penalty benchmark." (Emphasis in original.) Scavenger Sale, 288 F.3d at 311.

The court elaborated further, stating:

"[N]o sum less than or equal to the judgment that would be entered following a trial may be called a 'penalty.' The outcome of litigation is the lawful benchmark. Any lower settlement is a discount, and to insist that the full amount (that is, the probable judgment) be paid if the settlement falls through is not to insist on or collect a 'penalty' by comparison to the party's original legal entitlements." Scavenger Sale, 288 F.3d at 312.

The court summarized the issue as follows:

"In contract law a court asks whether liquidated damages reasonably approximate the actual damages from breach; in settlement cases we ask whether the full payment provided in the event the settlement falls through reasonably approximates the damages that the court

was likely to provide had the case been litigated to conclusion." Scavenger Sale, 288 F.3d at 312.

The court found that the $600,000 payment was not a penalty because the original amount owed, $1.6 million, provided the benchmark to measure the reasonableness of the sum. Scavenger Sale, 288 F.3d at 312.

Bush contends that Scavenger Sale supports his argument that the modification of the settlement amount from $25,000 to $79,000 is not a penalty. According to Bush, he "reasonably calculated his damages to be in excess of $300,000.00." He further argues that during the mediation conference he "offered to settle the matter for $103,000.00," and, when the offer was rejected by Schmiege, Bush "ultimately accepted a settlement of $79,000.00 in the event Schmiege did not make his installment payments of $416.66 in a timely fashion." However, Bush has not cited anything to support his bare assertions as to the amount of "actual damages." In any event, the question is not what Bush had estimated his damages to be; the question is what amount the court likely would have awarded had the case been litigated. See Scavenger Sale, 288 F.3d at 312.

Here, there is nothing in the record to indicate what, if anything, the court would have awarded had the case been litigated to its conclusion. That fact distinguishes this case from Scavenger Sale. There, the district court had entered summary judgment for the plaintiff, and thereafter the parties agreed that the plaintiff had a claim for $1.6 million, the agreed value of the note. There was no question that, had the matter been litigated, the plaintiff would have been entitled to at least that amount. Scavenger Sale, 288 F.3d at 312. Bush's bare assertion that his claim was worth in excess of $300,000 does not make it so. Unlike in Scavenger Sale, the court made no finding in Bush's favor, and the Agreement did not express, as it easily could have, what Bush's

claim was worth. Indeed, Schmiege could argue that Bush's claim was worth nothing and that he (Schmiege) chose to settle the matter for $25,000 to save himself the aggravation and cost of litigating the matter. There is simply nothing in the record to show what, if anything, the court would have awarded had the matter been litigated. Accordingly, as there is no basis for finding the provision reasonable, we find that the provision is an unenforceable penalty.

Based on our resolution of the above issue, we need not address whether Bush's acceptance of the missed monthly payment and subsequent payments waived Schmiege's alleged breach of the Agreement.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed.

Reversed.

BYRNE, P.J., and ZENOFF, J., concur.